By the Court. Woodruff, J.
The objection that the variance between the allegations and the proof precludes a recovery, was properly overruled. The complaint states that the defendants are common carriers generally, without specifying any particular route, or between what places they are pursuing their business ; and then avers that the plaintiff caused the trunk containing the property in question to be delivered to them at Brooklyn, to be conveyed by them from Brooklyn to Buffalo, and that they accepted it, and promised to convey and deliver the same: but not regarding their duty as common carriers, they so negligently conducted themselves that the trunk was broken open, and rob *601 bed, and the property in question, was taken therefrom, and not delivered, but was wholly lost to the plaintiff, etc.
The proof showed that the trunk was delivered to the defendants at Brooklyn, to be carried to the passenger depot of the New York and Erie Railroad Company, to go with the agent of the plaintiff by that railroad to Buffalo. And that by reason of the failure of the defendants to deliver the trunk at that depot, (it having been put on board a North River steamboat by the defendant’s agent,) the defendants undertook to regain the possession, and then, without further charge or expense, to deliver it to the plaintiff’s agent, at a hotel in Buffalo.
This was undoubtedly a variance; but a variance only in some particulars. By the provisions of the Code, “ No variance between the pleading and the proof shall be deemed material, unless it have actually misled the adverse party to his prejudice in maintaining his action or defence upon the merits. And whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the Court, and in what respect he has been so misled.” (§ 169.)
No such' proof was offered, nor indeed was it claimed on the trial that the defendants were misled. We do not perceive that such a claim could be made with any plausibility. The successive undertakings of the defendants were, in effect here described with single reference to a final result, to carry from Brooklyn and deliver at Buffalo. The defendants were fully apprized of the claim of the plaintiff, and of the substantial fact upon which it rested, and of the ground upon which they were sought to be charged.
Nor is it material in this case that the complaint avers, and the answer admits, that the defendants are common carriers, without specifying the termini of their route. The proof showed that they are at least common carriers between Brooklyn and the respective railroad depots in New York, and it is proved that they received the trunk to carry on the route of their accustomed business, and the proof does not show that they have performed the duty thereby cast upon them. It is not shown that the loss of the property occurred on any other route. No proof given on the trial shows that the trunk was opened between New York and Buffalo. Having received the trunk, the liability of the defendants, as *602 common carriers, continued until they had performed the duty which, as such carriers, they did assume. The trunk having never been afterwards produced, and safely and securely carried and delivered, the defendants, before they can claim exoneration, on the ground that they were not common carriers between Hew York and Buffalo, must, at least, show that, when, after their mistaken and negligent delivery on board the steamboat, they regained its possession, it was safe; not then broken and rifled.
It is, therefore, unnecessary for us here to say whether, had they shown that it was thus safe when they began to carry it to Buffalo in pursuance of their second undertaking, they would have been any the less liable.
We, nevertheless, are of opinion that the previous negligence and temporary loss of the trunk, and the trust devolved upon .them by the plaintiff’s agent at their instance, and his leaving for Buffalo in reliance upon their assurance, constituted ample consideration for their undertaking to “ get the trunk,” and to convey and deliver it at Buffalo. And, moreover, that, whether in the performance of this undertaking, they be regarded as common carriers, or merely as private carriers for hire, proof that the trunk was broken open and robbed of the property in question before its delivery, was sufficient to cast upon them the burden of proving that this happened without fault or negligence on their part. Ho such proof was offered.
Hor was it necessary for the plaintiff to aver in his complaint that the trunk was lost without his fault. It was enough that the plaintiff stated the delivery to the defendants, and that the loss occurred through their negligence, and so are the precedents. If the plaintiff’s own negligence caused or contributed to the loss, that was matter of defence.
The mere fact, that the delivery of the trunk to the defendants was by Davis, the plaintiff’s agent, and that the undertaking was in form made to him, does not of itself create any obstacle to the plaintiff’s recovery, if, under the circumstances, the defendants would have been liable to Davis himself, had he been the owner of the property lost. This subject was considered in Needles v. Howard, (1 E. D. Smith, 57,) and Grant v. Newton, (Ib. 97,) and in the cases there referred to.
*603 But a more serious question remains to be considered. Davis, the plaintiff’s agent, was a traveller. He was about leaving Brooklyn for Buffalo, intending to leave Hew York by the Hew York & Erie Railroad. He employed the defendants to take a box to the freight depot, and to take the trunk to the passenger depot, to go with him to Buffalo by the railroad. The trunk was a o traveller’s trunk, within the ordinary meaning of that word. The trunk contained Davis’s wearing apparel, and also a box of jewelry belonging to the plaintiff, which latter box is the property for the loss of which the action is brought. The defendants are an express company, employed in carrying and delivering goods and baggage in the Cities of Hew York and Brooklyn. Although the finding of the jury is not in those precise words, yet, when examined in connection with the proofs, it may be reasonably taken to import that it is the uniform usage of city express companies to charge for the transportation of articles with reference to their value, though this was not communicated by the defendants to Davis, nor was it proved that, he had actual knowledge of it. The jewelry constituted no part of a traveller’s equipments or baggage, but was merchandise. The defendants had no knowledge that the trunk contained jewelry, nor that Davis had jewelry in his trunk on former occasions when they had carried his trunk for him.
The proof was uncontradicted, that the defendants would have charged a higher price for the carriage, had they been aware that the trunk contained jewelry; and, what is, perhaps, even more important, it shows that their course of business and uniform practice was, to adopt- special precautions for their own protection, when they knew that they were carrying articles of especial value, such as jewelry, &c. And, to this end, they require a receipt therefor on delivery at the place of destination, and do not carry such articles except under circumstances in which this is practicable. While as to travellers’ trunks to be delivered at railroad depots, although they cannot get receipts for them, they deem this extraordinary precaution not important. Indeed, there is evidence that, in view of the impracticability of obtaining receipts at the passenger depot, the defendants would not have carried the trunk, had they been apprised that it contained jewelry.
*604 It is not denied, nor, we believe, doubted, that, under these circumstances, the defendants became liable for the safe carriage and delivery of the trunk, as an ordinary traveller’s trunk, and for its contents, to the extent that they consisted of the traveller’s clothing, and such articles as are usually or properly comprised in the term baggage. But it is claimed by the defendants that' that is the limit of their liability, and that, as here, the trunk, and all of its contents which belonged to Davis, was delivered,, they have done all that they undertook to do, and all which it became their duty to do. That, not having been informed that the trunk contained jewelry or merchandise of any description, they have never undertaken to carry jewelry or merchandise, and the law cast upon them no duty to see to its safety or delivery: or, at all events, having used all the care and diligence necessary to secure, and having in fact secured the safe delivery of the traveller’s trunk, with all that properly constituted baggage contained therein, they have fully discharged their duty. That they cannot be ignorantly or involuntarily brought under responsibility for valuable merchandise delivered to them under the guise of a traveller’s baggage. .
That carriers of passengers are not liable for the loss of money or merchandize contained in the travelling-trunks of such passengers, delivered to them as ordinary baggage, is well settled; and yet, in respect to such baggage, they are regarded as common carriers, and subject to the responsibilities of carriers of goods, even to the extent of insuring the safe carriage and delivery. (Orange County Bank v. Brown, 9 Wend. 85,118; Pardee v. Drew, 25 Wend. 460; Hawkins v. Hoffman, 6 Hill, 588 ; Grant v. Newton, 1 E. D. Smith, 98, and cases cited; The Great Northern Rail-way Co. v. Shepherd, 14 Eng. L. and Eq. 367.)
And again, if the owner be guilty of any fraud or imposition, as, by concealing the value or nature of the goods and either does or says any thing which tends to mislead the carrier in respect thereto, put him off his guard by creating the impression that the goods are of less value than in truth they are, or otherwise preventing him from exercising proper precautions, in view of the importance of the hazard, the carrier will not be responsible.
The cases above cited, from our own reports, in relation to carriers of passengers, proceed upon these grounds; and Mr. *605 Angel, in commenting thereon, says of the first named, that it “Is in accordance with the incontrovertible principle, that no person has a right, by practising concealment or fraud, to impose a duty upon another which he would not, if acting advisedly, have undertaken(it may be added) nor to disarm him of that vigilance which the nature and extent of the danger reasonably demands, or deprive him of the increased compensation justly due for the more arduous and responsible service.
These principles are plainly applicable to all carriers of goods, and are only just, as a protection, while the law is strict, if not harsh, in holding them to rigid accountability, when the duty to carry safely is fairly devolved upon them.
Whether the principle of those discussions is applicable to carriers who are employed to carry and deliver the travelling-trunk of a traveller, though not carriers of passengers themselves, is the immediate question before us.
It is, no doubt, true, as a general rule, in relation to the employment of carriers of goods, that the employer is not bound to disclose the contents of packages delivered for carriage, unless inquiry is made by the carrier. The rule is, in substance, so stated in Story on Bailments, § 567; in Kent, 3d vol. p. 603; and in Angel on Carriers, § 264; and numerous cases are cited in each in support of this rule.
And it is equally true, jhat the carrier, if he does inquire, has a right to a true answer, so that he may fully understand the extent of responsibility which he incurs by accepting the goods, may charge for the carriage a sum proportioned to the risk, and may adopt precautions, to secure the safety of the goods, which correspond with the magnitude of the hazard. (See same authorities above referred to.) And if the employer deceives the carrier, as to such contents, he will not be entitled to hold him in case of accidental loss, to any greater liability than would rest upon him if the goods were in truth as represented. (Tyly v. Morrill, Carth. 485.) And it may be doubtful, whether, in such case, the carrier is liable at all.
It was said, in Riley v. Horne, (5 Bing. 217,) that if the carrier, without inquiry, does take charge of the goods, he waives his right to know their contents and value. But this must be understood with the qualification, that nothing is said or done by the *606 party from whom the goods are received, calculated to deceive the carrier in respect to such value and contents.
As, for example, in Gibbons v. Paynton, (4 Burr. 2298,) where gold was concealed in an old nail-bag. In Riley v. Horne, supra.; and in Batson v. Donovan, (4 Barn. & Ald. 21,) the question was concerning the effect of a notice by the carrier, that he would not be liable unless the value was disclosed. Still, the Judges all recognize the principle of Gibbons and Paynton, that when the conduct of the owner is such as tends to deceive the carrier in regard to the nature and value of the property, he will not be liable.
These principles seem to us to sustain the ground taken by the defendants, in relation to the box of jewelry now in question. It was merchandize—it was of peculiar value—it did not belong to the traveller, but to a third person. The defendants were practically and effectually notified that the trunk which they undertook to carry was a traveller’s trunk. They had a right to assume that it contained the articles usually carried by travellers on their journey. In short, it was held out to them as baggage; and we can see no reason for not extending to them the same protection which is afforded to carriers of baggage, who carry the person of the owner also. The authorities which have been referred to, and numerous others which are therein mentioned, warrant no distinction between carriers of passengers and carriers of goods, where the carrier is deceived, as to the nature or value of the property entrusted to him; and that deception may as easily be effected by imposing upon the carrier valuable merchandize, under the guise of the owner’s travelling-baggage, as by a direct verbal misrepresentation.
The verdict cannot, we think, be sustained. A new trial must be ordered; costs to abide the event.
Ordered accordingly.