Hoffman, J.
The complaint states that the defendant was a large manufacturer of mouldings, and used therein a large quantity of 1J inch pine lumber; that in the month of May, 1857, “said Marshall, (the defendant,) and Hiram Ourtiss made an" agreement by which it was agreed, that said Curtiss should furnish for delivery at the manufactory of the defendant, in the city of Hew York, all the l|r inch pine lumber which said Marshall would require for use in his said manufactory, for the space of one year, not exceeding in the whole one hundred thousand feet, and the defendant should pay therefor on delivery, at the rate of $40 per thousand feet.”
It is then averred that said Hiram Ourtiss did deliver about 30,000 feet, in the months of June and August, 1857. Then, that in December, 1857, “ Hiram Ourtiss had, *25 for the purpose of carrying out his agreement, purchased 60.000 feet more of lumber, and it was then mutually agreed by and between them, that said original agreement should be modified so that Marshall should receive, and said Curtiss deliver the said 60,000 feet, when he had used the lumber already furnished by the said Curtiss, and pay therefor in Black & Gram’s notes, at four months, indorsed by said Marshall, and said plaintiffs allege that said Marshall did use the lumber which had been purchased by said Curtiss, and after said modified agreement, said Curtiss assigned all his claim and said lumber to the plaintiffs.”
There is then an allegation, that after the said Marshall had so used the inch lumber, as before stated, to wit: in April, 1858, and at other times, an offer to deliver the 60.000 feet was made and refused.
The defendant expressly denies both the original and the modified agreement; the delivery of 30,000, or any number of feet under the same; or the offer to deliver the 60.000 or any other number of feet, according to the same.
The proof is (assuming it for the present to be sufficient), that the original agreement of May, 1857, was as stated •in the complaint, adding that the lumber was to be delivered monthly; that in December, 1857, he delivery of the lumber was by agreement suspended until the defendant had used what he had already received, but on condition that he should take at once (or in one parcel), the balance of the 100,000 feet, as soon as he had used up what he had received. In November, 1857, Hiram Curtiss had sold his business and lumber to the present plaintiffs, but possession not to be delivered till January, 1858. At the time of the December agreement, the defendant was apprised of this sale; one of the plaintiffs was present at the making such agreement. H. Curtiss acted as agent of the plaintiffs in making such modified agreement. Robert E. Curtiss, one of the plaintiffs-, states he was present, and the defendant was to take all the lumber which we then had on ha,nd for him at one time. He must refer to the plaintiffs. *26 The action proceeds on the modified agreement and nothing else.
Then, on the question of pleading and variance, the case is this: An allegation in the complaint of an agreement between Hiram Ourtiss and the defendant, and proof of an agreement by him as agent of the plaintiffs, his agency, and their interest in the subject matter, being known to the defendant. In other words, it was an agreement made in effect with the plaintiffs through their agent.
How can this be such a variance between the allegation in a pleading and the proof, as could have actually misled the adverse party in maintaining his defense upon the merits. (Code, § 169.)
If the allegation had been that the agreement was had with the plaintiffs, proof that it was made by H. Curtiss, as their agent, would have sustained the case, without amendment. (Richards v. Westcott, 2 Bosw., 589, and see Chapman v. Carolin, 3 Bosw., 456.) It does not appear to me satisfactory to rest the case upon this point.
The agreement proceeded upon, is that of December, and three witnesses concur that the balance of the lumber was not to be delivered until the defendant had used up that which had been previously delivered. He was to take it in the spring, when he had used up what he had on hand.
To sustain the action, sufficient testimony must have been adduced that the defendant had used up what had been delivered, or such a rescission of the contract by him as would entitle the plaintiff to proceed on another ground. How the evidence is so slight and unsatisfactory (apart from the effect of the complaint and answer), that I should treat the verdict as without evidence to support it.
Hiram Ourtiss merely says: He thought defendant had used up the lumber bought of him; presumes' he saw other lumber than his own at defendant’s yard; “ don’t know that defendant had used up all the lumber bought of me.” Eobert E. Ourtiss states that the defendant said he was not *27 going to take any more lumber, in consequence of witnes’s father not having done right about some notes.
On the other side, the defendant expressly swears that in August, 1858, when he went out of business, he had on hand 7,000 to 11,000 feet of lumber, which he had bought of Ourtiss. And George Marshall says there was torn 7,000 to 9,000 feet.
The allegation of the complaint was explicit that all the lumber furnished had been used. The defendant, denying expressly every agreement of every kind, has not met this allegation in general or particular terms.
I do not think that this was such a plain admission on the pleadings, as precluded the defendant from adducing evidence to contradict that of the plaintiff. Besides, the absolute denial of any agreement seems to involve a denial of the allegation that something was done and completed under and in pursuance of it.
I think there must be a new trial.
Bosworth, Ch. J.
By the original contract of May, 1857, H. Ourtiss was to furnish and deliver to Marshall, “ all the pine lumber which said Marshall would require for use in his said manufactory,' for the space of one year,” which Marshall was to take; and he was to “ pay therefor on delivery, at the rate of $40 per 1,000 feet,” and, as a matter of course, in money.
After the delivery of 30,000 feet, and in December, 1857, the original agreement was modified so “ that Marshall would receive and said Ourtiss deliver ” 60,000 feet more of lumber, which Ourtiss had purchased for the purpose ■ of carrying out the original agreement. Marshall was to receive the 60,000 feet, “when he had used the lumber already furnished by said Curtiss, and pay therefor, in Messrs. Black & Gram’s notes, at' four months, to be indorsed by said Marshall.”
The complaint states that “ after the said modified agree- . ment, Ourtiss assigned all his claim and said lumber to the plaintiffs.” •
*28 The proof is, that H. Curtiss sold out all his interest in the original contract, and, all the lumber he had, and his business to the plaintiffs, in Uovember, 1857, possession to be given in January, 1858. H. Curtiss testified that when defendant called on him in December, 1857, the time the alleged modified agreement was made, “ he was notified that I had sold out; one of the plaintiffs was present in December.” “ I modified the agreement in December, 1857, as agent of plaintiffs.” Robert E. Curtiss swears he was present in December, 1857, and gives his version of the agreement then made.
If the plaintiffs can recover at all, it must be on the modified agreement. That was made between the plaintiffs of the one part, and the defendant of the other. But no such agreement, nor any agreement between them, is alleged.
A plaintiff, on an allegation of.an agreement between-the defendant and A., and an assignment of it by A. to the plaintiff, cannot recover by proving such an agreement between himself and the defendant.
Curtiss by selling all his lumber and his business to the plaintiff, could not confer a right on the plaintiff to perform the contract on his part, and transform the defendant’s liability to accept lumber from H. Curtiss, into a liability to accept it from the plaintiffs. (Robson & Sharpe v. Drummond, 2 Barn. & Ad., 303.) This being the rule, the modified agreement, as it is called, is in effect a new agreement between the plaintiffs and the defendant, having no dependence upon or connection with the original contract. Some of its provisions are indeed incorporated into the new agreement, but the one is no more a part of the other than it would be if the second had been in writing, canceling the first, and specifying in detail the entire provisions of the new. But there is nothing in the case, indicating that any such position was taken at the trial. And •whether it was taken on the motion for a new trial, the case does not disclose.
*29 It is taken on the appeal from the order, and as the case on the merits, assuming the validity of the modified agreement, whatever it may have been, is by no means clear against the defendant, I think he should have a new trial, on paying the costs of the former trial and of the motion for a new trial, and that the costs of the appeal should be costs in the cause, and abide the event.
The costs of the trial and of a motion for a new trial should be paid by the defendant,, as it does not appear that any relief or instruction was asked at the trial, based on any such view of the rights of the parties, as is above suggested.
Robertson, J.
The case made out by the evidence, appears to me to be entirely different from that set out in the complaint, and a motion was made on the trial, to dismiss the latter, which was denied.
The complaint sets forth an agreement by which the father of the plaintiff (Hiram Curtiss,) agreed to furnish for delivery at the defendant’s frame manufactory, all the pine lumber of certain dimensions which the latter “would require for use in his manufactory for a year,” not exceeding 100,000 feet, for which the latter agreed to pay $40 for each thousand feet. The answer denies the making of this agreement. The only testimony in regard to it, is that of Hiram Curtiss, who testified that he made an agreement by parol with the defendant, in the forepart of May, 1857, when no one else was present, in the following way: The defendant asked him “ what he would furnish 100.000 feet of lumber for, of the kind he had been getting from others, which ” the witness had seen; the latter “ asked him what he would give, he said $40 per 1,000 feetand the witness said he “ would let him know in a day or two,” and in that time “ told him he would,” and then “ bought 200.000 feet of box lumber of the first quality,” among which was what he intended to sell to the defendant, and gave the latter “ the privilege to pick out what he did not wantit was to be delivered monthly, within a year, and *30 paid for by the defendant’s notes at four months. All of this was denied by the defendant. If this testimony established any contract at all, it was one to purchase 100,000 feet of lumber absolutely, and not in reference to the defendant’s use for it. The complaint does not undertake to say that he needed it, although some declarations of the defendant were given in evidence, in regard to the absence of such necessity. If the contract was as stated in the complaint, the plaintiff could not recover without showing that the defendant needed it. The plaintiff did not, however, undertake to claim for any such contract as that sworn to, and should not therefore be allowed the benefit of it. The witness before alluded to, testified also that the proportion of “ clear fourths” and “selects,” was not designated in the agreement, creating thereby, a vagueness in its terms, sufficient to avoid it for uncertainty.
The complaint further alleges, that Curtiss delivered to the defendant 30,000 feet of such lumber in June and August, 1857, in pursuance of the contract set out in it. This is denied in the answer. Hiram Curtiss testified that 24,000 feet was delivered in June, 1857, and over 13,000 feet in August following, under the contract to which he testified, and the defendant gave his notes at four months therefor. In September the defendant requested a suspension of delivery, to which Curtiss assented, and in October and November, the former notified him he had no further use for it.
The complaint alleges a purchase by Curtiss, of 60,000 feet more lumber in December, 1857, and an agreement to modify the original contract by the parties thereto; by such modification the defendant was to receive, and Curtiss deliver such 60,000 feet, when the former had used the lumber already furnished, and he was to pay in the notes of a firm, (Black & Gram’s,) indorsed by him. It further alleges, that after such modification, Curtiss assigned his claim and the lumber to the plaintiff, his son. The answer takes issue on these allegations. Curtiss (the father) testifies that he sold out his interest in the contract and *31 lumber to the plaintiff in November, 1857, possession to be delivered in January, 1858; and in December, 1857, .consented to' postpone the delivery of the lumber to the defendant until he had used up what he had already received, and the defendant agreed to take such residue, and pay for it in Black & Gram’s notes at four months. Edward Curtiss (another son) corroborates this. The plaintiff testified to the same thing, adding however, that the defendant “ was to take the lumber when he commenced using it in the spring.” Curtiss (the father) testified he made the modification as agent of the plaintiffs. This is contrary to the allegation in the complaint of the modification before the assignment.
The complaint alleges that the plaintiff offered to deliver the 60,000 feet of lumber to the defendant, and demanded the price thereof, which was refused. This is denied in the answer. There was no evidence given of any tender, but there was some of a waiver. Curtiss (the father) testified that in February or March, the defendant told him he was not going to take anymore lumber of him; the plaintiff Curtiss, testified that he added, in consequence of not having done right about the notes. This seems to have been an objection to deal with Hiram Curtiss from some pique, rather than a formal application and refusal; indeed the contract does not seem to have been spoken of at all.
There was also no evidence that the defendant had then used up what the plaintiffs’ assignor had delivered, or that he had commenced using it in the spring, according to the terms of the modification of the contract; nor was there any evidence of a demand of the notes of Black & Gram. A mere refusal to take the lumber could not compel the defendant to pay cash. The plaintiffs could not be better off from an offer to perform than from an actual performance. Besides this, the plaintiffs were not in possession of any lumber, so far as appears by the evidence, and if Hiram Curtiss held it as their agent, he had only 60,000 feet, and the complaint alleges only a delivery of 30,000 *32 feet, making their ability to complete the contract defective by 10,000 feet of lumber. If the contract was entire, the defendant had a right to refuse all offers but one to •complete the whole.
I think on the evidence, the complaint ought to have been dismissed.
The consequences of the ambiguity of the original contract in fixing the amount of “clear fourths” and “select clears,” appear in the testimony as to damages; one being stated to have fallen $10 a thousand, and the others only from $4 to $6. How could the jury possibly tell the damages on each kind for non-acceptance ?
A still more serious question arises under the statute of Bauds. The first agreement as alleged, was to take 100,-000 feet of lumber by installments, as the defendant needed it, monthly, paying for it by his notes at four months, part being delivered. A subsequent agreement is alleged to have been made, by which the defendant agrees to take the whole mass at once in six months after, giving the notes of a third party therefor. Is not this substantially an entirely new agreement to buy 70,000 feet of lumber for certain notes, deliverable at the end of six months, on which new contract nothing is paid, nothing delivered at the time of making it? The defendant’s original obligation was lightened by taking the articles sold, monthly, and the condition that he needed it in his business. Both these are swept away by the new arrangement, and he is to take twice as much as he has taken during several months in one mass. Is there not as much danger of perjury or misapprehension of witnesses, in so altering a contract already made, as in originally making one like it? The delivery of the 30,000 feet already made, formed no evidence of the making of the new contract made afterwards. The very evidence in this case shows how easily loose talk may be converted into a strict contract by partial hearers. 1 therefore think the new contract was void, and the plaintiffs, if they recover at all, must do so on the original *33 agreement, and. they certainly could not be entitled to the damages given them, on that.
There should therefore be a new trial, the costs to abide the event.