## COURT OF APPEALS.

ELISE MAGNIN and others, respondents, agt. THE ADAMS EXPRESS COMPANY, appellants.

Where a common carrier, in receiving goods for carriage, delivers a receipt to the shipper, containing these words : " And if the value of the property above described is not stated by the shipper, the holder will not demand of the Adams Express Company a sum exceeding fifty dollars for the loss or detention of, or damage to the property aforesaid," such receipt is a contract between the parties, and the omission of the shipper to disclose the value is such a concealment as amounts to a fraud in law upon the carrier, and where there is no dispute as to the material facts, it is a question of law for the court, and not of fact for the jury ; and in case of loss of the property by the carrier he will be exonerated from liability arising from ordinary negligence.

*Semble*, a carrier under such a contract would not be relieved where his acts, or those of his servants, have amounted to misfeasance or abandonment of his character as carrier.

THIS action was brought by the plaintiffs, who compose the firm of Vue J. Magnin, Guedin & Co., of the city of New York against the Adams Express Company, to recover the value of certain watches and watch keys, delivered in a package by the plaintiffs to the defendant to be forwarded by the latter to J. E. Merriman & Co., at Memphis, Tennessee. The latter assigned their interest to the plaintiffs. The case has been tried three time before a jury and three times at a general term of the superior court, and this is the third time before the court of appeals. The facts will be found in the 56 *N. Y. R.* (*p.* 168), and in the opinion of the court. The case now comes up on appeal from the general term of the superior court of the city of New York, affirming a judgment in favor of the plaintiffs.

Magnin agt. Adams Express Company.

*C. M. Da Costa & T. P. Chapman*, for appellant.

*C. Bainbridge Smith*, for respondents.

FOLGER, *J.*—There was a contract between the plaintiffs and the defendant that if they did not state to it the value of the property shipped, they should not demand of it a sum exceeding fifty dollars for the loss or detention thereof (*Magnin* agt. *Dinsmore, president, &c.*, 56 *N. Y.*, 168). This contract did not, *per se*, excuse the defendant from liability for a loss arising from its negligence (*Id.*). Thus we have heretofore held in this case.

At the trial, the rulings in which are now under review, the jury found negligence in the defendant, and that the loss arose therefrom. The judgment of the court as to legal liability, above cited, and the finding of the jury as to the facts have thus concurred in favor of the plaintiffs. But the judgment of the court then given was only upon the questions then presented. Other questions now arise.

The defendant now insists that the imposition and deceit upon it of the plaintiffs, amounting to fraud, relieved it from liability for the loss. It was the duty of the plaintiffs not to practice imposition and deceit upon the defendant so as to add to its risk and to lessen its care and diligence (*Orange Co. Bank* agt. *Brown*, 9 *Wend.*, 116). Though the duty of a common carrier, and the rigorous liability which is upon him at common law, arises principally from the public employment which he exercises (*Coggs* agt. *Barnard*, 2 *Ld. Raym.*, 917, 918; *per lord* HOLT, *C. J., in Lane* agt. *Cotton*, 12 *Mod.*, *485; *Story on Bailm.*, sec. 549); yet his hire and reward also enter therein, and he has a right that his compensation shall be in measure with the risk he takes, and that he shall not be subject to unknown hazards (9 *Wend.*, *supra*). The defendant insists that there was a fraud wrought upon it by the plaintiffs in their failure to disclose the real value of the package and the nature of the contents; that the silence

of the plaintiffs and the alleged deceptive form, dimensions and general appearance of the package, were an imposition and deception. A shipper may become chargeable with fraud upon a carrier, through imposition and deception, as well when he is silent as when he speaks that which is untrue. A neglect to disclose the real value of a package and the nature of its contents, if therewith there is that in its form, dimensions and other appearance designed — and even if not designed, if fitted — to throw the carrier off his guard, will be conduct amounting to the fraud now spoken of. The intention to impose upon the carrier is not material; it is enough if such is the practical effect of the conduct of the shipper (*Pardee* agt. *Drew*, 25 *Wend.*, 459). This question, too, was passed upon by the jury at the last trial as one of fact. Under the instructions of the court, they found that there was not, upon the part of the plaintiffs, either active fraud or concealment; neither in the way in which the parcel was delivered to the carrier, nor in what was said or left unsaid at the time of the delivery, nor in the character of the package as to the way in which it was enclosed and sealed. The defendant now urges and did there urge, that the question is not one of fact for a jury, but of law for a court; and that the plaintiffs should be nonsuited for concealment of the true value of the package.

An examination of the testimony for the facts of the case has brought me to the conclusion that there is no proof of fraudulent concealment of the value by the plaintiffs, unless their silence be such concealment. If the claim of the defendant is to be upheld, it is on the ground that silence alone as to the real value is conclusive evidence of that deception and imposition which works fraud upon a carrier and relieves him of his liability. Where there is no special contract limiting the common-law liability of the carrier, nor any notice so specially brought home to the knowledge of the shipper as to have that effect, the shipper is not bound to disclose the value of the goods, unless he is asked thereof

by the carrier; but the carrier, for proper reasons (*Crouch agt. L. & N. W. Railway Co.*, 14 *C. B.*, 255), has a right to make inquiry and to have a true answer, and if he is deceived by a false answer given, he will not be responsible for any loss. If, however, the carrier makes no inquiry, and no artifice is used to mislead him, he is responsible for loss, however great may be the value. Such is stated in *Story on Bailm.* (*sec.* 567), to be the better opinion, and the cases there cited sustain the text. Where there is a special contract limiting liability, or other thing tantamount thereto, it is otherwise.

The case of *Batson* agt. *Donovan* (4 *Barn. & Ald.*, 21) is perhaps the strongest which can be cited, and the reasons for the rule are there well stated. There the shipper knew of the notice given by the carrier limiting his liability. The package left for carriage was a box, properly directed, and with the name of the owners upon it. I infer that the business of the owners, as bankers, was known to the carrier. The box was locked and corded though not sealed. It contained bills, checks and notes to over $4,000 in value. The carrier did not know what it contained, nor that the contents were of great value, nor was any thing said to him thereof. No more was said to him than "it is the box for Newcastle." These are all the facts stated in the report; but it is not probable that any circumstance is omitted which would have made for the carrier, or which would have materially changed the aspect of the case as presented in the books. The shipper's counsel, arguendo, said: "Here is no imputation of fraud; negligence in the plaintiffs or their servants in not communicating the value of the parcel is alone insinuated."

BEST, J., states his "protest against what, I think, a new principle in the law relative to carriers, viz.: that the owner of a parcel of value, such parcel having nothing in its appearance indicative of its contents being of small value, is bound, unasked by the carrier, to state what it is worth." "I cannot consider the non-communication of the contents of a

box as any thing like fraud." "This is a case of silence only." He was the sole dissentient judge, but his statement of the facts is not questioned by those whose opinions prevailed. The case (*Batson* agt. *Donovan*) must be taken as one of special acceptance by the carrier and of silence only as to value by the shipper. The facts of the case now here cannot be stated any more favorably for the plaintiffs in it than that there was a special acceptance by the defendant, and that there was only silence on their part. In *Batson* agt. *Donovan*, it is true, the case was left to the jury to say "whether the plaintiff dealt fairly by the defendants in not apprising them that the box contained articles of value." But the consideration of the rule *nisi* for a new trial, brought up the question whether, as matter of law, the facts of a limited liability by notice and of silence as to value were enough to debar the shipper of a recovery. A majority of the court adjudged that they were; that by delivery without information, the shipper held the package out to the carrier as an ordinary article, which he would have no objection to take as of course; that it was the duty of the shipper not to deliver as ordinary goods, but to inform of nature and value; that in point of law it was a concealment and fraud and deceit in law not to do so. Besides, there was a question for the jury, also, whether the defendant was not chargeable with gross negligence in their carriage of the parcel. I have dwelt upon the case cited as it is so like this in its facts, as it was much considered by the court —for the dissent was intelligent, vigorous and persistent, and the judgment not carelessly arrived at — and as it has been often cited at the bar and from the bench, acquiesced in by courts and text writers, sometimes with and sometimes without hesitation, and seems never to have been reversed or overruled. Seven years afterwards the dissenting judge still kept up and expressed his dissent (*Brook* agt. *Pickwick*, 4 *Bing.*, 218), from which it appears that the adjudication remained then unchanged. Nor was it without precedent

Magnin agt. Adams Express Company.

tending strongly to the same end (*See Clay* agt. *Willan*, 1 *Hy. Blk.*, 298; *Yates* agt. *Willan*, 2 *East*, 128; *Izett* agt. *Mountain*, 4 *id.*, 171; *Nicholson* agt. *Willan*, 5 *id.*, 507; *and others might be cited*). It is not too much to say that this rule and certain kindred rules became so much fixed as the law, by these and other decisions, as to lead to an enactment by parliament, restoring, to some extent, the strict operation of the common-law liability so far as it relates to carriers by land (*See statutes* 11 *Geo. IV, and* 1 *Wm. IV, c.* 68). The same principle has been asserted in this state (*Orange Co. Bank* agt. *Brown, supra*). There NELSON, C. J., states it thus : "The carrier in such case is not bound to make inquiry, and if the owner omits to make known the value he is liable only to the amount mentioned in his notice or not at all, according to the terms of his notice." It is true that in that case the carrier had not given notice to the owner, nor otherwise made express special acceptance. But he was a carrier of passengers only (so far as that owner was concerned), and thus there was a practical limited acceptance ; for he was not, in the absence of information of value or nature of the goods committed to him, to be held to a carrier's duty and liability further than for a traveler's ordinary baggage (*Gt. North. Railway Co.* agt. *Shepherd*, 14 *Eng. L. & Eq.*, 367). It is true, also, that the case (9 *Wend., supra*) is one of more than silence merely as to value—as the large sum of money for which it was sought to charge the carrier was placed in an ordinary traveling trunk, thus to a degree making an affirmation of slight value, so that this utterance of the learned judge may not have the force of a binding authority, while it has all the weight which his high judicial repute can give it. It is to be observed, too, that he cites as authority for his assertion *Batson* agt. *Donovan ; Thorogove* agt. *Marsh, Niel Gower*, 105; *and Marsh* agt. *Horne* (5 *B. & Cress.*, 322; *see also, Pardee* agt. *Drew, supra; Warren* agt. *West. Trans. Co.*, 5 *Robt.*, 590 ; *Richards* agt. *Westcott*, 2 *Bosw.*, 589, *S. C.*, 7 *id.*, 6). The opinion in *Railroad Co.*

agt. *Lockwood* (17 *Wall.* [*U. S.*], 357–380), recognizes the justice and reasonable character of the rule. Nor is there wanting an analogy in the law for this doctrine.

If an applicant for marine insurance, though without design to deceive and only by failure to mention, conceal a fact which is material for the insurers to know, as increasing the risk he is asked to assume, and thereby affecting the rate of premium which he should charge, the contract of the insurer may be avoided (2 *Duer on Ins.*, 380, *et seq.*). And the reason of the thing is on the same side. As a general rule, the carrier must take and carry that which is offered to him therefor, because of his public employment; but he ought to have a reasonable reward for the carriage. As the risk of carriage of a parcel of much value is greater than of one of mean value, the reward for it should be greater; and, as the risk is greater, so should the care be greater, and so it will be if the value be known. Thus it appears that the carrier should know of the value of the package which he is called upon to carry, that he may exact his due reward and take due care (*See Riley* agt. *Horne*, 5 *Bing.*, 217). As has been stated, in the absence of agreement for a limited liability, it is the duty of the carrier to make all needful inquiry as to value; but when the shipper agrees with the carrier for a limited liability, he thereby expresses to the latter his estimate of the risk to be run and of the care needed, and holds out the package to him as an ordinary article, which he would have no objection to take as of course. The carrier is thereby put off his guard. The shipper might refuse to agree to a limited liability, and demand (generally) carriage upon the common-law liability of the carrier, and then they deal at arm's length, and this would arouse the attention of the carrier — at least would put upon him the duty of inquiry. But, accepting carriage upon the terms of a limited liability, the shipper indicates his judgment of the degree of risk and of needed care; and his silence as to the real value is the same as an assertion of

mean value, thus keeping from the carrier his adequate reward, and, what is worse, misleading him as to the degree of care and security which he should provide. It is a concealment of an important fact entering into the bargain to be made; such a concealment as amounts to a fraud in law upon the carrier; and, where there is no dispute as to the material facts, as there is none in this case, it is a question of law for the court and not of fact for the jury.

I conclude that the defendant is right in its claim that the question of concealment of value, upon the undisputed facts of the agreement and of the silence of the plaintiffs, was one of law for the court and not of fact for the jury, and that silence only, as to value, amounted to such an imposition upon the defendant as would relieve it from a liability for the total value of the goods, unless something more in its conduct is shown than negligence to carry safely and deliver promptly. I wish to add here a remark that when the words imposition, deception and fraud are used, it is because they are found in the books treating on this matter, and not as imputing to the plaintiffs any motive or design inconsistent with complete mercantile honor and fair dealing. It would be more accordant with the idea meant to be conveyed to use the language suggested by reputable writers on insurance, and to say that a concealment without design is a failure to observe an implied condition, that the contract for carriage is free from misrepresentation or concealment (2 *Duer Mar. Ins.*, 647; 1 *Phillips on Ins.*, p. 279, *sec.* 537).

It is proper also to add that, while such a concealment under such a contract as there is in this case, relieves the carrier from liability for a loss occurring from ordinary negligence we do not now hold that he will be thereby thus relieved where his acts or those of his servants have amounted to a misfeasance, or abandonment of his character as carrier. (*Sleat* agt. *Fagg*, 5 *Barn. & Ald.*, 342).

There are other questions raised by the argument made

for the defendant as to the measure of damages, and as to the admission of evidence. As to the first it seems clear that the plaintiffs could not demand from the defendant more than would have resulted to them had the defendant made safe carriage and prompt and correct delivery.

In that case the plaintiffs would at the farthest have had from their consignees payment for all the goods sent at the price to the consignees fixed upon them by the plaintiffs. The sum of that price, with interest thereon from a day when the goods should in usual course of carriage have reached the consignees and been accepted by them will make the damage which would naturally and proximately result to the plaintiffs. Though a rule is sometimes stated thus — that the damages are the value of the goods agreed to be carried and delivered at the place and time of delivery — that rule is but a branch of the more general one that the damages for a failure to perform are a sum equal to the benefit which would have resulted from a performance of a contract (*Sturgess* agt. *Bissell*, 46 *N. Y.*, 462).

When the owner and shipper of the goods is himself to take the goods at the place of destination and there sell them for his own account, for what they will there bring, the market value there is the measure of his damages, because that would have been his benefit from performance of the contract. But every case is governed by its own facts, and here the price of the goods at the place of destination was fixed by the plaintiffs before they were committed to the carrier.

Either that price was to be paid by the consignees, or the goods were to have been returned to the plaintiffs at New York, where they would have been worth to them the market price of them there. No other value to the plaintiffs could have been in the contemplation of both the contracting parties, nor any other damages than such as would result from a failure to obtain that value. The evidence of the witness Byrd, objected to, seems to be of the declarations

Magnin agt. Adams Express Company.

of one Woodward. If it be assumed that the latter is shown to have been an agent of defendant, it does not appear when the declarations were made, or that they were part of the *res gestæ*, accompanying the performance of any act or duty as agent. So much of the answer as relates the declarations of Woodward was improperly received. The objection and exception cover more than this, and somewhat which does not appear objectionable, and perhaps they would furnish no ground of error for that reason. As for other causes, the judgment must be reversed, it is not of moment to consider them farther.

The judgment must be reversed and a new trial ordered, &c.

All concur; GROVER, J., absent.

NOTE. — This case was decided, as will be seen from the opinion of the court, on the authority of *Batson* agt. *Donovan* (4 *Barn. & Ald.*), 21; and, notwithstanding the apparently careful consideration of this case by the court, its decision is founded on a misapprehension of the facts and a misinterpretation of the law, as decided and expressed by the judges in the case of *Batson* agt. *Donovan*. The court observes: "That it dwelt upon that case as it was so like this in its facts," and after referring to and citing the facts and law involved in that case, it arrives at the extraordinary conclusion that that case decides "it was the duty of the shipper not to deliver as ordinary goods, but to inform of nature and value; that in point of law it was a concealment and fraud and deceit in law not to do so" (*sic*), when it is obvious from an examination of that case no such principle was decided by that court or a majority of it. There were two questions of fact submitted to the jury, and they found a verdict for the defendants, and the court refused to grant a new trial.

*First.* There is very little similarity in the facts of these cases. In *Batson* agt. *Donovan*, the plaintiffs delivered to the defendants, who were common carriers, a box containing bills, checks and notes of the value of £4,072. The box was left with one of the defendants, with no other observation than this: "It is the box for New Castle." Nothing was said as to what it contained, nor did any of the defendants know it contained articles of value. It had on it a brass plate, on which was inscribed, "Wm. Batson & Co;" it was locked and corded, but not sealed. William Batson & Co. were bankers at Berwick and New Castle. The coach by which the box was sent arrived at Berwick at twelve o'clock at night, and staid there half an hour; it stood in the middle of the street,

about thirty yards from the pavement. About a quarter after twelve, the box was put into the boot of the coach, and a porter watched the coach, but he was not so attentive as he might have been, and the box was probably stolen from the boot while he was upon the watch, by some person who contrived to elude his notice. The defendants had given notice that they would not be answerable for parcels above the value of five pounds, unless they were entered and paid for as such. The plaintiff knew of this notice.

In the case at bar, the package was not money, nor was it of the value of $20,000 and upwards, but watches and watch-keys of the value between $1,400 and $1,500, and it was testified to, on the part of the defendant, that, at the time the package was delivered, the value of it was asked, but not stated ; and, on the part of the plaintiff, that the value was neither stated nor asked. It also appeared that the plaintiffs had been in the habit of sending to the defendant the same kind of packages, and some of greater value, and that the value was seldom, if ever, asked, and that this package was delivered in the usual and ordinary course of business, without any knowledge or information that greater care would be taken, or that a greater charge would be made if the value had been disclosed. Other merchants were accustomed to deliver valuable packages and goods of a similar character to the defendant in the same manner. The size of the parcel in question was ten inches in length and width, and five and three-quarter inches high. It was wrapped up in brown paper, and contained nine seals of sealing wax, and each seal was about an inch in diameter, which bore the plaintiffs' name. The consignees were to pay the freight. The defendant's receipt, which is construed to be a contract between the parties, states that the company are not to be held liable or responsible for any loss from the causes enumerated therein, unless specially insured and specified in the receipt. The package was never delivered to the consignees, who resided at Memphis, Tenn., where it was to be delivered, but the package with the smaller boxes, which contained the watches and watch-keys inclosed therein, was, a few months after the delivery to the defendant, found at the coroner's office, in Brooklyn, rifled of their contents, and no explanation was given of the loss or how it was occasioned, or whether the defendant ever undertook to carry the package as it agreed to do. In *Batson* agt. *Donovan*, the plaintiff was expressly notified that the defendants would not be answerable for parcels of the value above five pounds, unless they were entered and paid for as such, and, as judge Holroyd said (4 *B. & Ald.* 31) : " That the carrier had by this notice expressly refused to accept parcels of value without being paid for them accordingly;" while, in the case at bar, the consignees were to pay the charges, and the receipt expressly states that the company will not be liable for certain losses unless the shipper insures, and, if the value is not stated, he will not demand of the defendant

Magnin agt. Adams Express Company.

a sum exceeding fifty dollars for the loss or detention of or damage to the property aforesaid. The losses referred to in the receipt the plaintiffs understood meant those which were specifically enumerated in the receipt, and there was no act of the plaintiffs which prevented the carrier from exercising due care against loss.

*Second.* But if the case of *Batson* agt. *Donovan* was " so like this in its facts," then the same rule of law which was applied to that case should have been applied to this, and the court really supposed that in determining the question involved in this case, it was deciding it in conformity with the principles laid down in *Batson* agt. *Donovan ;* but what this court states was decided as matter of law in that case was submitted to the jury as a question of fact, and the error of this court in that respect is palpable. The marginal note to that case gives a correct syllabus of the points decided, and the reporters, after stating briefly the facts, say : " At the trial, two questions having been left to the jury ; *first,* whether the plaintiffs had been guilty of unfair concealment by not informing the carrier of the nature and value of the parcel ; and, *secondly,* whether the carrier had been guilty of gross negligence; *held,* by three judges (BEST, J., *dissentiente*), that the direction was right." The jury rendered a verdict for the defendants. The court was composed of four judges, and, on a motion for a new trial, judge BEST gave the first opinion, and he was in favor of granting a new trial. Judge HOLROYD rendered the next, and he said : " In this case, however, the carrier had by this notice expressly refused to accept parcels of value without being paid for them accordingly." * * * Then the question arises, whether there was a misdirection. The learned judge left two points to the jury : 1st. Whether there was negligence in the plaintiffs' not specifying the contents of the box to the carrier ; 2d. Whether there was gross negligence in the defendants. With respect to the first, I think it was the plaintiffs' duty to specify the contents, and it was a fraud and deceit in law in not doing so. The second question is whether there was gross negligence on the part of the defendants. I think that question was properly left to the jury, and that we cannot say, upon the evidence, that they have drawn a wrong conclusion. I think, therefore, the verdict ought to stand."

Judge BAYLEY rendered the next opinion. The case was tried before him, and while he, in concluding his opinion, observed that the defendants ought to have been apprised of the value of this box, and were not, and that the plaintiffs were guilty of misconduct in this respect; that the plaintiffs' neglect deprived the defendants of the compensation they ought to have received, and prevented them from taking care, which they otherwise would have done, and that the *value* of the parcel increased the possibility of loss, he was of the opinion that the plaintiffs' neglect, *under the circumstances of this case,* was a bar to the action; but, in the commencement of his opinion, he said : "I left, I believe, these two questions

Magnin agt. Adams Express Company.

to the jury: First. Whether the plaintiffs dealt fairly by the defendants in not apprising them that the box contained articles of value ; and, secondly, whether, in the case of a parcel of *such* value as the defendants might expect this to be, there was gross negligence in the defendants. And *unless the first of these points, that the plaintiffs did not deal fairly by the defendants, in omitting to apprise them of the value of the box, will, under the circumstances of the case, sustain the verdict*, I think there ought to be a new trial."

The last opinion was by ABBOTT, chief justice, who says: " I am of the opinion that the case was properly left to the jury by my learned brother at the trial, and I think the verdict of the jury is warranted by the evidence." And this learned judge does not intimate that the carrier ought to have been apprised of the value of the parcel, but his decision is put expressly on the ground that the two questions of fact were properly submitted to the jury. Mr. justice BEST, also, in his dissenting opinion, maintains that the questions ought to be submitted to the jury, and he was in favor of a new trial, because the charge of the judge might have misled them, and they should only have been asked whether they thought the defendants had sufficiently guarded a coach containing many parcels, each of small value, while it was left in the street at Berwick, and the jury should have had some explanation of what is meant by gross negligence. It will be observed that that court was composed of four judges, and because two of them thought it was the plaintiffs' duty to specify the contents of the parcel, and it was a fraud and deceit, on their part, in not doing so, the court of appeals seriously contends that a majority of that court — which must have been, of course, by an arithmetical calculation — decided that the failure of the shipper to disclose the value of the parcel amounted to a fraud in law, which exonerated the carrier in case of loss from liability arising from ordinary negligence. And it will be further observed that one of the two judges — BAYLEY, J.— before whom the cause was tried, although, on the motion for a new trial, he was of the opinion the non-disclosure of the value of the parcel was a fraud and deceit on the part of the plaintiffs, still, he left the question as one of fact for the jury to determine, adding that, unless that point, " the plaintiffs did not deal fairly by the defendants, in omitting to apprise them of the value of the box, will, under the circumstances of this case, sustain the verdict, there ought to be a new trial."

I. But undue importance has been attached to the case of *Batson* agt. *Donovan*, and, had it not been for the very large sum of money involved, it would not have commanded the consideration which it received from the court. And the great amount for which the defendants were sought to be made liable evidently controlled the verdict of the jury, and had its influence on two members of the court. Most of the observations made by the judges were mere *dicta*, as the case had been submitted to the jury

on the two questions involved, and they found a verdict for the defendants, and the court refused to grant a new trial.

II. There is one point in *Batson* agt. *Donovan* on which three judges out of four of that court seem, at least, to agree, and that is, that the facts as developed on the trial of that case were sufficient to submit to the jury the question whether the defendants had been guilty of gross negligence. Judge BEST was of that opinion, although he thought that the jury should have had some explanation of what constituted gross negligence. Judge HOLROYD considered that the question of gross negligence, on the part of the defendants, was properly left to the jury. Chief justice ABBOTT was also of the same opinion, and although judge BAYLEY thought that the fact of the plaintiffs' not disclosing the value of the parcel, was guilty of a fraud, which was a bar to the action; still, in the same opinion, he says: "I left, I believe, these two questions to the jury, whether the plaintiffs dealt fairly by the defendants in not apprising them that the box contained articles of value; and, secondly, whether, in the case of a parcel of such value as the defendants might fairly expect this to be, there was gross negligence in the defendants; and I rather think I left those questions in such a way that unless the jury were with the defendants on both, they should find for the plaintiffs; but I am not confident upon that point. And unless the first of these points, that the plaintiffs did not act fairly by the defendants in omitting to apprise them of the value of the box, will, under the circumstances of this case, sustain the verdict, I think there ought to be a new trial." Can there be a doubt that if the jury had found that there was gross negligence in the defendants, that the plaintiffs would have failed in that case? There is not a case to be found in the books where the facts are of a similar character, and gross negligence was found against the carrier, that he was ever protected by his notice. It was one of the controlling facts in the case of *Batson* agt. *Donovan*, and, if it were not, why was it submitted to the jury? And if, as the court of appeals says, "the case is so like this in its facts," why did the court reverse the judgment? True, it might have said that negligence and not gross negligence was submitted to the jury, and, therefore, it differed from *Batson* agt. *Donovan*, but it does not base its decision upon any such ground. Besides, the fact of fraud, deceit or intentional concealment, on the part of the plaintiffs, should have been alleged in the defendants' answer, and it was not (*see Westcott* agt. *Fargo, commission of appeals MSS.*), and facts proved, but not pleaded, are not available to the party proving them (6 *N. Y. R.*, 179).

III. The court of appeals also observes, as to the case of *Batson* agt. *Donovan*, that it has dwelt upon the case cited as it was much considered by the court; for the dissent was intelligent, vigorous and persistent, and the judgment not carelessly arrived at, and it has been often cited at the bar and from the bench, acquiesced in by courts and text writers, some-

times with and sometimes without hesitation, and seems never to have been reversed or overruled." It would be very interesting to learn what courts and text writers have acquiesced in that decision *sometimes with* and *sometimes without* hesitation. From all the information that can be derived from the works of elementary writers, the decision in that case seems to be generally understood, and their understanding of it is opposed to that of this court. *Edwards on Bailments* (*p.* 471), says: " If there had been an unfair concealment, tending to throw the carrier off from his guard in the safe keeping of the goods, he is not chargeable." In an English case (referring to *Batson* agt. *Donovan*, 4 *Barn. & Ald.*, 21), "it was left to the jury as a question of fact," and *Story on Bailments* (*sec.* 570), and *Kent's Commentaries* (2 *vol., p.* 607) express similar views. These may be considered text writers, but they cannot possibly be those referred to by the court of appeals. The court is equally unfortunate as to the dissent being intelligent, vigorous and persistent, except in the sole dissenting opinion of judge BEST, and he afterward acquiesced in the decision of *Batson* agt. *Donovan*, in deciding the case of *Riley* agt. *Horne* (5 *Bing. R., p.* 217), which, subsequently, came before him. Judge BEST afterward became chief justice of the common pleas, a court of co-ordinate jurisdiction with the courts of king's bench and exchequer. And where appeals were taken from the king's bench, they were reviewed by the judges of the exchequer and common pleas, and the decisions of each of those courts were reviewed by the two others. In 1828, eight years after *Batson* agt. *Donovan* was decided, chief justice BEST, in *Riley* agt. *Horne* (5 *Bing.*, 217), said: " That I might conform to the opinion of the majority of the court in *Batson* agt. *Donovan*, I asked the jury whether the agent of the plaintiff had been guilty of any negligence, or failed in his duty to the carriers. They answered in the negative, and I think their answer was the proper one. As the carrier took the parcel without requiring to know its value, and without insisting that it should be entered and paid for according to its value, he took it without any limitation of his common-law liability, and must be answerable for its loss " (*S. C.*, 15 *E. C. L. R.*, 422). Surely, chief justice BEST must have known what was decided by the court in *Batson* agt. *Donovan*, as he was one of its judges at the time, and wrote the dissenting opinion in that case, and he does not suggest that that case decided the failure, on the part of the shipper, to disclose the value was a fraud in law, but expressly states, as the case itself shows, that it was a question of fact for the jury. And, notwithstanding the foregoing decision, this court says: " Seven years afterward, the dissenting judge (judge BEST) still kept up and expressed his dissent (*Brooke* agt. *Pickwick* (4 *Bing.*, 218), from which it appears that the adjudication remained unchanged." Of course, it remained unchanged, and never had been reversed or overruled ; nor is the opinion of chief justice BEST, in the case of *Brooke* agt. *Pickwick*, susceptible of the criticism the court of appeals has

given it. The following cases were decided after *Batson* agt. *Donovan*, and whenever the question of concealment of value arises, they hold that it is a question of fact for the jury. And why not? For how can the court hold, as a matter of law, that the carrier was prevented by the acts of the shipper from exercising due care against loss; and, more especially, in the absence of proof showing any intention to defraud the carrier by concealing its value? Those cases are in perfect harmony with *Batson* agt. *Donovan*, and directly at variance with the decision of the court of appeals in this case (1821, *Garnett* agt. *Willan*, 5 *B. & Ald.*, 53 ; 1822, *Sleat* agt. *Fagg*, *id.*, 342 ; 1827, *Duff* agt. *Rudd*, 3 *Bro. & B.*, 117; 1827, *Lowe* agt. *Booth*, 13 *Price Ex.*, 327; 1827, *Brooke* agt. *Pickwick*, 4 *Bing.*, 218; 1828, *Bradley* agt. *Waterhouse*, 3 *C. & P.*, 318 ; 1828, *Riley* agt. *Horne*, 5 *Bing.*, 218; 1828, *Langley* agt. *Brown*, 1 *Moore & P.*, 583 ; 1841, *Wyld* agt. *Pickford*, 8 *Mees. & W.*, 443).

IV. There was no concealment, in fact, of the value of the box in question, nor any motive to conceal, as the freight was to be paid by the consignees, and it was delivered, as others had been, in the usual and ordinary course of the plaintiff's business; but it is not every intentional concealment of value that exonerates the carriers from liability in case of loss. Thus, in *Sleat* agt. *Fagg* (5 *Barn. & Ald.*, 342), it was held that a parcel containing country bankers' notes, of the value of £1,300, and addressed to their clerk, *in order to conceal the nature of its contents*, was delivered to the carrier without any notice of its value, to be carried by the mail coach, and was accepted by him to be so carried. The parcel was sent by a different coach, and was lost. The carriers had previously given notice that they would not be answerable for any parcel above five pounds in value if lost or damaged, unless an insurance was paid. No insurance having been paid in this case, held, notwithstanding, the carrier was responsible for the loss. This case was decided subsequently to *Batson* agt. *Donovan* and by the same court.

*Bradley* agt. *Waterhouse* (3 *C. & P.*, 318). This case was tried in 1828, seven years after *Batson* agt. *Donovan*, before lord TENTERDEN, then chief justice of the king's bench, the same court in which *Batson* agt. *Donovan* was decided, and in that case a parcel containing two hundred sovereigns, inclosed in six pounds of tea, was sent by coach and paid for as ordinary value, both the parties sending and the owners of the parcel being aware of the notice of the coach proprietors limiting their responsibility to five pounds; the parcel was stolen while it was standing in the street. In an action to recover the value the chief justice left it to the jury, after stating these facts in these words: " The question comes to this: Has this been a case of gross negligence on the part of the defendants, or has the loss been brought on by the plaintiff's own conduct in sending valuable articles under a slight disguise?" The jury rendered a verdict for the defendants; but the question, notwithstanding the intentional

concealment of the value of the parcel, was left to the jury to determine.

V. In *Wyld* agt. *Pickford* (8 *Mees. & W.*, 443), decided in the court of exchequer, in 1841, the whole subject was elaborately examined, and the court, after reviewing *Batson* agt. *Donovan* and kindred cases, came to this conclusion; "The weight of authority seems to be in favor of the doctrine, that in order to render a carrier liable after such notice, it is not necessary to prove a total abandonment of that character, or an act of willful misconduct, but that it is enough to prove an act of ordinary negligence — gross negligence — in the sense in which it has been understood in the last mentioned cases."

*Third.* It will be observed, that the facts in this case differ materially from that of *Batson* agt. *Donovan*, in all its prominent features. The package in question was not money, but contained watches and keys of the value, between $1,400 and $1,500, while the box in the case of *Batson* agt. *Donovan*, was the value of $20,000 in gold, consisting of checks, bills, &c. In that case, BAYLEY, J., said (p. 36): "In the case of a box or parcel known to be of great value, the proprietors may take the extraordinary care of putting it into the personal charge of a coachman or guard, or even of sending a special messenger with it, or going with it themselves." In the case at bar the defendant in his answer alleges, "that if the value of the said package had been disclosed to him to be as in said complaint alleged, the charges thereon would have been at least seven dollars and fifty cents," but the charges were to be collected of the consignees, and there is no evidence tending to show that the defendant ever attempted to carry the box; and, neither the notice or receipt, nor the defendant's answer, state that greater care would be taken if the value of the contents of the parcel had been disclosed; and the losses referred to in the receipt were understood by the plaintiffs to mean those enumerated therein and against which they might insure; and there is no pretense that the loss arose from any of those causes. In the case of *Batson* agt. *Donovan*, the notice was clear and explicit, that the defendants would not be answerable for parcels above five pounds unless they were entered and paid for as such" (4 *B. & Ald. p.* 29, 34) and therefore there was a clear misapprehension of the facts as well as a misinterpretation of the law as laid down in the case of *Batson* agt. *Donovan*, and instead of following the decision in that case, as the court of appeals supposed it did, it not only ran counter to it, but to a long series of adjudications which succeeded it. And where is the remedy? If a motion for a reargument were made, it would be met by the decision of this court in *Terry* agt. *Wait* (56 *N. Y. R.*, 94), where such a motion was made, in which the court said: " Counsel are very apt to fall into the error of supposing that every point and suggestion in the cases which they argue is overlooked by the court when not specifically discussed and answered in a written opinion, and this

Magnin agt. Adams Express Company.

error has in several instances lead to applications like the present.    They should reflect, that before a case is decided, the court is in the habit of deliberately considering it in all its bearings, and that, when sanctioning a former decision, the mere omission to notice and discuss in the opinion supposed distinctions, is not sufficient to warrant the supposition that they have escaped observation."    There is, in view of the decision in the case in question, a bit of irony or grim humor in the above utterance of the court, which would have provoked a smile from Heraclitus himself.    S.