BIGBY v. UNITED STATES.

(Circuit Court, E. D. New York. August 9, 1900.)

UNITED STATES—LIABILITY FOR TORTS—NEGLIGENCE IN OPERATING ELEVATOR —PERSONAL INJURY.

While the license extended by the United States to the public to use its passenger elevator in a post-office building imposes upon the government the duty to use ordinary care to see that the facilities offered to its licensees are in a condition of reasonable safety, no implied contract arises

from such relation to carry the passenger to his destination, which will entitle one who is injured through the incompetence of a person in charge of the elevator to maintain an action against the United States for damages, under Act March 3, 1887 (24 Stat. 505), permitting a recovery against the United States for claims founded upon any contract, express or implied, with the government of the United States, or for damages, in cases not sounding in tort.

Roger Foster, for plaintiff.

George H. Pettit, U. S. Atty.

THOMAS, District Judge. The demurrer is to a petition stating in effect that the petitioner, while on his way to the marshal's office in the post-office building in the city of Brooklyn, was injured by the incompetence of a person in charge of an elevator in said building, operated by the United States, which was a breach of an implied contract whereby the United States agreed to carry the petitioner safely. The cause of action exists, if at all, under that part of the Tucker act, of March 3, 1887 (24 Stat. 505), which permits recovery against the United States for claims founded "upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty, if the United States were suable." The elevator is the usual passenger elevator employed in buildings of the United States, and is devoted solely to the purposes of the government. The United States was not a common carrier in the operation of such elevator, for "no one can be considered as a common carrier unless he has in some way held himself out to the public as a carrier in such manner as to render him liable to an action if he should refuse to carry for any one who wished to employ him." Allen v. Sackrider, 37 N. Y. 341, 342. Neither did the United States expressly stipulate with the petitioner for his carriage, nor did the law imply such undertaking. The law does not imply a contract to carry even in the case of common carriers. It often happens that a common carrier of goods does make a contract for their transportation. Under existing modes of business such contracts are usually made by such carriers, and perhaps less frequently by common carriers of passengers. If an expressed contract to carry exists, the declaration may be upon the contract, although the offended person may declare upon the duty imposed by law. But when there is a mere refusal to carry, or injury or delay, the declaration should be upon the duty implied by law, and not upon the contract, unless there be some negotiation between the parties tantamount to an agreement; in other words, a contract to carry is not implied. If it exists, it is because it has been expressed; for, where the law imposes the duty to carry, it would be idle to imply a contract to carry. When the law commands something to be done, it need and does not resort to the fiction that the party commanded impliedly contracted to do the act. Hence there is no implied contract for the reasons stated, even if the United States be regarded as a common carrier. But the true relation of the parties in fact and legal theory is this: For the purpose of transacting business

with its officials, the United States extended to the petitioner a license to enter its building, and to use in connection therewith the facilities for passing from floor to floor. This permission imposed a duty upon the government. The duty respecting its elevator was similar to that relating to the safety of the floors, stairs, or any other part of its building. The duty was the same as that imposed upon the owner of any building having a public relation. The duty grew out of a permission to enter and to use the building for the purpose for which it was intended. This permission imposed upon the United States the duty to use ordinary care that the facilities offered to its licensees should be in a state of reasonable safety, and a breach of such duty would constitute culpable negligence. Hence the declaration in the present case must be in tort, which brings the case within the exception stated in the Tucker act. The learned counsel for the petitioner urges that a license to enter private premises is a contract, expressed or implied, accordingly as the license is expressed or implied. In the present case the license to enter and use the elevator is implied; hence it would be asserted that there was an implied contract to enter. Here, again, the suggestion is to imply a contract for the purpose of raising a duty, when the law already imposes the duty without implication of a contractual relation. Moreover, the courts and systematic writers have not classed with contracts a mere permission to do or forbear the doing of an act, but have rather regarded such license as authority to do something that otherwise would be unlawfully done. Hence it cannot be inferred that congress, by use of the term "implied contract," intended to include mere breaches of duty productive of injury to the licensee upon property of the government. The authorities collected by the several counsel are interesting and instructive, as is the discussion of the case in the briefs presented. From these and other sources are gathered essential and simple principles which govern the present issue, and require that the demurrer should be sustained, with costs.