### James M. Harrison *v.* A. Roy, Survivor, &c.

1. BAILMENT: WHAT CONSTITUTES A COMMON CARRIER: CASE IN JUDG-
MENT.—Where a planter, employing his wagons in hauling his cotton crop
to market, and habitually lading them on their return trips with goods to
be transported for hire, receives such goods and executes his receipt therefor,
undertaking to deliver them to the consignee in good order and without
delay at the customary rate of charges, he will be responsible as a common
carrier.   See *Gibson* v. *Hunt,* 1 Salk. 249 ; *Satterlee* v. *Grant,* 1 Wend. 272 ;
Edwards on Bail. 430.

ERROR to the Circuit Court of Choctaw county.   Hon. William ·
Cothran, judge.

A. Roy, as survivor of the firm of A. & W. D. Roy, sued
Harrison in the court below, as a common carrier, for damages
sustained by injury done to a load of goods which Harrison had
contracted to transport and deliver to said firm.

On the trial, it appeared from the evidence that Harrison had
executed a receipt, as follows :

"GREENWOOD, MISS., *Novr.* 13, 1856.
"Received of Shaw & East, in good order, the following packages, marked
as per margin, which I am to deliver, in like good order and without delay,
to A. & W. D. Roy, at Middletown, they.paying me carriage thereon at the
rate of custom per 100 lbs.

[Then follows marks of packages.]
[Signed]      "J. M. HARRISON."

That between Middleton and Greenwood the wagon in which
the goods were being transported was upset by the team running
off the turnpike, and that the goods were thereby wet and injured
to the amount of one hundred and twenty dollars; that the wagon
was being driven along the usually travelled public road, and was
upset "without fault on the part of the defendant or the driver,
and that the upsetting of the wagon could not have been pre-
vented."   That the defendant was on a trip with his wagon to
Greenwood, and gave the above receipt in order to enable a negro
of Mr. James (who was at Greenwood with a wagon) to get the
goods.   That defendant has several times before, on occasional
trips, hauled goods for the plaintiffs from Greenwood to Middleton,

and had received pay for hauling the goods in controversy, as well as for the goods hauled before that time. That defendant was hauling cotton to Greenwood, and when he could get a load back he took it.

The court instructed the jury that if defendant undertook to carry the goods for hire from one point to another, and deliver the same in good order, he was liable as a common carrier, and was responsible for all damage to the goods whilst in his custody, except loss arising from the act of God or the public enemy.

Verdict and judgment for plaintiff for one hundred and twenty dollars.

The defendant moved for a new trial, which was refused, and he excepted and sued out this writ of error.

*Campbell, Brantly* and *Sweatman,* for plaintiffs in error.

The defendant is not shown to be a common carrier.. If he was, and is liable as such, then every farmer, who hauls cotton to market and as an occasional employment, and as an accommodation to merchants or mechanics, or others, hauls articles, occupies the like position and incurs similar responsibility—a doctrine not to be tolerated. It is true this doctrine has received the sanction of the courts of Pennsylvania. See 1 W. & S. 285. But this case has been considered and rejected as authority in Georgia in a well-considered case—2 Kelly, 349; also, 20 Ohio R. 69. Tested by the common law authorities, it is manifest that defendant was not a common carrier, and, if not, he was not liable as such.

Common carriers are those who undertake generally, and *not as a casual occupation,* and for all people indifferently, to convey goods, for hire, *as a business,* and they are bound to carry for all who require them at the customary or a reasonable price, if they have the requisite convenience to do so. 2 Kent. Com. 597; Story on Bail.

If, by the common law, defendant was not a common carrier, how can he be held liable as such, seeing that we have no statute making him liable?

Defendant was not bound absolutely by his contract in this case. It expresses no more than the law will imply in the ab-

sence of an expression of such terms.   See directly on this very point Story on Bail.

We think the judgment must be reversed.

They also cited and relied on the following authorities: *Robertson* v. *Dunmore*, 2 Bos. & Pull. 417; *Brind* v. *Dale*, 8 Carr. & Payne, 207; Jones on Bail. 98; Story on Bail. secs. 33–35, 68–72, 444–450, 495, 496; *Saterlee* v. *Grant*, 1 Wend. 272; 1 Salk. 249; *Citizens Bank* v. *Nantucket Steamboat Co.*, 2 Story R. 17.

*P. F. Liddell*, for defendant in error.

No memorandum of Mr. Liddell's argument has come to the possession of the Reporter.

HANDY, J., delivered the opinion of the court:

The only question in this case is, whether the plaintiff in error is to be regarded in law as a common carrier.

It appears by the evidence that the defendant's wagons were engaged in hauling his cotton to Greenwood, and in order to get certain goods there belonging to the defendant, to be hauled on the return of the wagon, that he executed a receipt undertaking to deliver the goods to the plaintiff, who was to pay for their carriage at the customary rate; that the defendant had several times before, on occasional trips, hauled goods for plaintiff from Greenwood and received pay for the same; that he was in the habit of taking loads of goods back on the return of his wagons from Greenwood when he could get them.

It is insisted in behalf of the plaintiff in error that, under the circumstances, he cannot be held to be a common carrier, because the undertaking to transport the goods was not the regular business of the plaintiff in error, but a mere occasional service.

If the transaction had been a mere isolated undertaking, such as the plaintiff had not been in the habit of engaging in, and which was foreign to his regular and usual business, there would be force in this position.   But the evidence here shows that he was in the habit of taking goods on his wagons, on their return from the place to which they hauled his cotton, when he could get them; and this is further shown by the receipt for the goods in this case, executed by him, which is in due form of a carrier's

receipt, undertaking to deliver the goods in good order and without delay, *at the customary rate* of charges.

Under such circumstances it cannot be said that it was not a part of the business in which he was engaged to receive and transport goods, but that appears to have been a part of his ordinary employment, and this renders him in law a common carrier. *Gibson* v. *Hunt,* 1 Salk. 249; *Satterlee* v. *Grant,* 1 Wend. 272; Edwards on Bail. 430.

Judgment affirmed.