ELIJAH B. ALLEN AND WALTER B. ALLEN, APPELLANTS,
v. NORMAN SACKRIDER AND FRANK FARNHAM,
RESPONDENTS.

*Common and Special Carriers—Distinction defined.*

Where a person, being the owner of a sloop, and not engaged in public transportation, is specially employed to transport a cargo of wheat from one port to another, he is not to be deemed a *common carrier*, but only a *special carrier*, and he is not to be held to the strict accountability of a common carrier.

The distinction between a common and a special carrier defined and commented upon by Parker, J.

PARKER, J.—The action was brought against the Defendants, to charge them, as common carriers, with damage to a quantity of grain—shipped by the Plaintiffs in the sloop of the Defendants, to be transported from Trenton, in the province of Canada, to Ogdensburgh in this State—which occurred from the wetting of the grain in a storm.

The case was referred to a referee, who found as follows: "The Plaintiffs, in the fall of 1859, were partners doing business at Ogdensburgh. The Defendants were the owners of the sloop Creole, of which Farnham was master. In the fall of 1859 the Plaintiffs applied to the Defendants to bring a load of grain from the bay of Quinte to Ogdensburgh. The master stated that he was a stranger to the bay, and did not know whether his sloop had capacity to go there. Being assured by the Plaintiffs that she had, he engaged for the trip at three cents per bushel, and performed it with safety. In November, 1859, Plaintiffs again applied to Defendants to make another similar trip for grain, and it was agreed upon at $100 for the trip. The vessel proceeded to the bay, took on a load of grain, and on her return was driven on shore, and the cargo injured to the amount of $1,346.34. That the injury did not result from the want of ordinary care, skill, or foresight, nor was it the result of inevitable accident, or what in law is termed the act of God. From these facts, my conclusions

of law are, that the Defendants were special carriers, and only liable as such, and not as common carriers; and that the proof does not establish such facts as would make Defendants liable as special carriers, and therefore the Plaintiffs have no cause of action against them."

The only question in the case is, were the Defendants common carriers?

The facts found by the referee do not, I think, make the Defendants common carriers. They owned a sloop, but it does not appear that it was ever offered to the public, or to individuals, for use, or ever put to any use except in the two trips which it made for the Plaintiffs, at their special request. Nor does it appear that the Defendants were engaged in the business of carrying goods, or that they held themselves out to the world as carriers, or had even offered their services as such. This casual use of their sloop in transporting Plaintiffs' property falls short of proof sufficient to show them common carriers.

A common carrier was defined in Gisbourn v. Hurst (1 Salk. 249) to be " any man undertaking for hire to carry the goods of all persons indifferently; " and in Dwight v. Brewster (1 Pick. 50), to be "one who undertakes for hire to transport the goods of *such as choose to employ him*, from place to place." In Orange Bank v. Brown (3 Wend. 161), Ch. J. Savage said:— "Every person who undertakes to carry, for a compensation, the *goods of all persons* indifferently, is, as to the liability imposed, to be considered a common carrier." " The distinction between a common carrier and a private or special carrier is, that the former holds himself out *in common*—that is, to all persons who choose to employ him—as ready to carry for hire, while the latter agrees in some special case, with some private individual, to carry for him" (Story on Contracts, 752 a). The employment of a common carrier is a public one. He assumes a public duty, and is bound to receive and carry the goods of any one who offers. " On the whole," says Professor Parsons, "it seems to be clear that no one can be considered as a common carrier unless he has in some way held himself out to the public as a carrier in such

manner as to render him liable to an action if he should refuse to carry for any one who wished to employ him " (2 Pars. on Con. 166, note, 5th ed). The learned counsel for the Appellants, in effect, recognizes the necessity of the carrier holding himself out to the world as such, in order to invest him with the character and responsibilities of à common carrier, and to meet the necessity, says : " The Creole was a freight vessel, rigged and manned suitably for carrying freight from port to port ; her appearance in the harbor of Ogdensburgh, waiting for business, was an emphatic advertisement that she sought employment."

These facts do not appear in the findings of the referee ; and therefore cannot, if they existed, help the Appellants upon this appeal.

It is not claimed that the Defendants are liable, unless as common carriers. Very clearly they were not common carriers, and the judgment should therefore be affirmed.

All concur.

Affirmed.

<div align="right">

JOEL TIFFANY,

State Reporter.