(15 Misc. Rep. 93.)

JACKSON ARCHITECTURAL IRON WORKS v. HURLBUT et al.

(Common Pleas of New York City and County, General Term. December 23. 1895.)

**1. CARRIERS—WHO ARE—TRUCKMEN.**
   A firm describing themselves as "truckmen and forwarding agents," who make a business of moving heavy machinery from place to place for hire, for all who are willing to pay for it, are common carriers.

**2. SAME—NEGLIGENCE.**
   Where defendants, common carriers, broke, in handling, a machine they were moving for plaintiff, they were not relieved from liability therefor because plaintiff insisted on having the machine placed after dark, defendants having the right to refuse, or to stipulate for immunity from damages if it increased their risk as insurers.

**3. DAMAGES—MEASURE OF—USE OF MACHINE.** ·
   In an action to recover damages for the breaking of a machine used by plaintiff in its business, the amount paid for having the work of the machine done elsewhere, before repairs could be made, is a proper element of damages.

Appeal from trial term.

Action by Jackson Architectual Iron Works against Henry Hurlbut and another. From a judgment entered on a verdict in favor of plaintiff, defendants appeal. Affirmed.

The action was brought to recover $1,752 damages to a planing machine intrusted by plaintiff to defendants as common carriers, to be transported from the foot of West Twenty-Third street, in the city of New York, to the shop of the plaintiff in East Twenty-Eighth street, between First and Second avenues, in said city. The complaint alleged that the defendants were general truckmen and forwarding agents, and general carriers of goods, and also that the machine was injured by defendants' negligence. The answer denied that the defendants were common carriers, alleged that the injury to the machine was caused by the interference of the plaintiff, and put in issue the amount of the damages.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

J. Homer Hildreth, for appellants.

Jesse Grant Roe, for respondent.

DALY, C. J. The defendants, composing the firm of Hurlbut Bros., are general truckmen, doing business in the city of New York,—"truckmen and forwarding agents," according to their own description of their occupation. Their "specialty," as also de-

scribed by themselves, is "heavy machinery," which they move and transport,—undertaking what ordinary truckmen cannot do, because they have the appliances, wagons, and trucks to do it; employing 19 trucks and 20 horses, making no discrimination as to customers, and not refusing to move anything upon request if reasonably paid. From this description of the defendants' business, they undoubtedly come within the class designated as common carriers, as distinguished from special carriers for hire, who are not engaged in the general business of transporting goods. A common carrier is one who, by virtue of his calling, undertakes on recompense to transport personal property from one place to another for all such as may choose to employ him. Schouler, Bailm. (2d Ed.) 351. The criterion is whether he carries for particular persons only, or whether he carries for every one. If a man holds himself out to do it for every one who asks him, he is a common carrier; "but if he does not do it for every one, but carries for you or me only, that is a matter of special contract." Ingate v. Christie, 3 Car. & K. 61. To be a common carrier, one must exercise the business as a public employment. He must undertake to carry goods for persons generally, and he must hold himself out as ready to engage in the transportation of goods for hire as a business, not as a casual occupation. Story, Bailm. § 495. The transportation must be in pursuance of some carriage vocation which the carrier exercises. One may be a common carrier who has no fixed termini, but leaves the course of transportation in each case to depend upon his customers' wishes. Alkali Co. v. Johnson, L. R. 7 Exch. 267, affirmed L. R. 9 Exch. 338. Wagoners and teamsters, whose business it is to carry on hire goods and chattels from one locality to another, common porters, drivers, draymen, truckmen, and carmen, whether their employment be carried on from town to town, or from one part of a town to another, are common carriers. Story, Bailm. § 496; Richards v. Westcott, 2 Bosw. 589. It is not necessary that the exclusive business of the party should be carrying. So held where one, whose principal pursuit is farming, solicits goods to carry to the market town in his wagon on certain convenient occasions. He makes himself a common carrier for those who employ him. Schouler, Bailm. 355, 356. See, also, Ang. Carr. 870, 871; Chevallier v. Strahan, 2 Tex. 115; Harrison v. Roy, 39 Miss. 396.

The sole business of the defendants in this case was the carrying of heavy articles of merchandise such as was intrusted to them by the plaintiffs. They undertook, for hire, to transport the goods of such as chose to employ them from place to place (Dwight v. Brewster, 1 Pick. 50), undertaking for hire to carry the goods of all persons indifferently (Gisbourn v. Hurst, 1 Salk. 249), and under the definitions must undoubtedly be regarded as common carriers (Allen v. Sackrider, 37 N. Y. 341). By the common law every common carrier is bound to receive whatever may be offered him for transportation on hire, so far as comports with his means and the nature of his calling, and is liable to damages for unreasonable refusal. Schouler, Bailm. 383; Allen v. Sackrider, supra. It has been said that the test in a doubtful case is whether the carrier would be so liable, but if we

apply that test to the present case we meet with no difficulty. These defendants are but truckmen, or cartmen, on a large scale. A truckman would undoubtedly be liable for unreasonable refusal to transport the goods of a householder who was compelled to move, for instance, on the 1st of May; and in the case of the removal of heavy machinery, it is difficult to perceive why truckmen, whose business is to handle just such bulky goods, would not be liable for a like unreasonable refusal in a like emergency. The obligation to carry all goods offered grows out of the general transportation business in which the carrier is engaged, and his holding himself out to the public as a general carrier, so that dealings are had with him in reliance thereon. It makes no difference that these defendants' "specialty" was the moving of heavy machinery, and that they would refuse to move furniture; for, as I said before, the carrier is only bound to convey so far as comports with his means and the nature of his calling. Nor is it of importance that defendants have no regular tariff of charges for their work, but that a special price is fixed by agreement in every case they undertake. The necessity for a different charge in each case grows out of the difference in labor in handling articles of great bulk. The charge in each case may be proportioned to the risk assumed, and commensurate with the carriers' obligation as insurers. Such was the obligation and liability of defendants in this case when they received the planing machine to transport it from the foot of West Twenty-Third street to plaintiff's shop in East Twenty-Eighth street, and the learned trial judge might well have instructed the jury that they were common carriers and insurers of the goods. The defendants were not prejudiced, therefore, by his leaving it to the jury to decide whether they were common carriers or not, and the verdict of the jury, if based upon a finding against defendants on that ground, cannot be disturbed.

The main question in the case is whether any act of the plaintiff relieves the defendants from liability for the injury which the machine received while handled by their men. It appears that the defendants had brought the machine to the plaintiff's place on September 24th, about 6 o'clock in the evening, and proposed to leave it on the sidewalk all night, with one end resting on the truck in which it had been brought, and the other end in the entrance to plaintiff's yard. Plaintiff's superintendent insisted upon its being put into the shop that night. Defendants proceeded to comply with this direction, and, while handling the machine, the bed on which it rested was broken by being lowered irregularly on the two jacks employed for that purpose. Defendants claim that their men at the different jacks could not see each other, owing to the darkness, and that the injury was occasioned from that cause. If this be so, the damage was due to the negligence of the defendants in attempting to work in the dark without procuring lanterns to assist them. No act or direction of plaintiff prevented their procuring the necessary lights. Whatever precautions were needed they were at liberty to take, and they were not restricted in any way, nor controlled, by plaintiff, in the manner in which the work was to be done. The insistence of plaintiff upon the machine being put in the shop, and not left upon the sidewalk all

night, in no way controlled the judgment or discretion of defendants or their servants, who were at liberty to comply or not with this requirement, and who might have stipulated for immunity from damages if they had chosen, for a common carrier may limit his liability as insurer by contract in any particular case.　Moriarty v. Harnden's Express, 1 Daly, 227.　But the evidence tended to show that the understanding of the parties was that the work should be done in the evening after working hours, owing to the interruption of business which would be caused by the blocking up of the gangway, or entrance, in the moving of this bulky machine, which was over 30 feet long, 4 to 18 feet wide, and 4 feet 6 inches high, the whole weighing about 22,000 pounds; and in that view of the case the defendants were not required by the plaintiff to do more than the contract called for.

On the question of damages the verdict cannot be disturbed.　There was a dispute as to whether a new bed was required, at a cost of $855, or whether it would be sufficient to repair the old bed, at a cost of about $100.　The verdict was $500, and in view of the evidence that plaintiffs were subjected to an expense of $435 for work done out of the shop while the machine was disabled, and before repairs could be completed, the jury was manifestly indulgent to the defendants. Proof of the cost of such work was properly admitted.　It was not an attempt to show loss of profits upon contracts, but simply the direct damage sustained by the loss of the use of the machine.　None of the exceptions in the case present error, or any ground for reversing the judgment.

Judgment and order affirmed, with costs.　All concur.