NEEDHAM C. COLLIER, Respondent, v. LANGAN & TAYLOR STORAGE & MOVING COMPANY, Appellant.

**St. Louis Court of Appeals.   Argued and Submitted March 10, 1910.   Opinion Filed April 5, 1910.**

1. **TRIAL PRACTICE: Improper Argument of Counsel: Retraction.** Where, in an action for loss of goods by fire, on objection to the argument of plaintiff's counsel to the effect that plaintiff showed defendant took the goods away and burned them up, the court stated there was no evidence that the goods were burned up by defendant, and counsel retracted his statement, such statement, though improper, because outside of the evidence, is not ground for reversal.

2. **WITNESSES: Husband and Wife: Agency of Wife.** Where a husband called up a corporation engaged in the business of moving household goods, and asked its representative to come to his house and arrange with his wife for the moving of

his goods, the wife as the agent of the husband was competent to testify as to the arrangement made with the corporation for the moving of the goods, and the incidents connected therewith.

3. **TRIAL PRACTICE: Discretion of Court: Evidence: Refreshing Memory from Memorandum.** The action of the trial court in allowing a witness to refresh his memory from memoranda made sometime after the happening of the events in issue is within its discretion, and its rulings will not be disturbed unless the discretion was abused.

4. **COMMON CARRIERS: Who Are: Question of Law or Fact.** It is a question of law for the court to determine as to what constitutes a common carrier, but it is a question of fact for the jury to determine whether the person charged as a common carrier is within that definition and is carrying on his business in that capacity.

5. **WAREHOUSEMAN: Liability of: Destruction of Goods by Fire.** A warehouseman is not liable for the destruction of goods by fire not due to his negligence or that of his agents in the course of their employment, where due diligence has been exercised for the safety of such goods, and the burden of showing negligence of the warehouseman is always on plaintiff; but it is sufficient for plaintiff to show delivery of the goods in good condition and their return in a damaged state, from which facts the law declares a prima facie case of negligence is made out.

6. **PRIVATE CARRIERS: Liability.** A private carrier with or without a reward is only a bailee, and his liability is determined by the rules governing the responsibility of bailees.

7. **COMMON CARRIERS: Who Are.** A "common carrier" is one who undertakes for hire to transport the goods of such as choose to employ him, and ordinarily carters and expressmen engaged in carrying freight to and from a depot or warehouse, or between places in the same locality, or between different localities, are common carriers.

8. ——: ——: **Liability: Limiting Employment.** The fact that one engaged in the carriage of goods may have limited his employment to the carriage of household goods only does not change his position as a common carrier, for the employment may be limited to the mere carriage of particular kinds of property, and when this is shown and is a known and avowed fact, such person will not be liable as a common carrier for any other goods or property entrusted to his agent without his consept; but he will be liable as a common carrier for the loss of those goods, in the carriage and moving of which he is engaged as a regular business.

9. ——: **Warehouseman: Liability.** A common carrier may be a warehouseman, and when acting as such its liability is that of a warehouseman and not that of a common carrier.

10. **BAILMENT: Loss of Goods: Burden of Proof.** A bailee for hire, who fails to deliver goods received by him, has the burden of excusing the non-delivery.

11. **COMMON CARRIERS: Negligence: Destruction of Goods by Fire: Evidence Sufficient to Prove Negligence.** In an action against a common carrier of household goods for loss of goods by fire while in its custody, evidence that the driver of a moving van in which said goods were being transported was told there was a fire in the van but that he paid no attention to it until when, sometime afterwards, he looked around and discovered the fire, was sufficient to warrant the jury in inferring defendant was guilty of negligence resulting in the loss.

12. ——: **Who Are: Liability of: Destruction of Goods by Fire.** One holding himself out as engaged in the general business of moving household goods from one residence to another in a city, for all who choose to employ him, is a "common carrier," and is an insurer against all losses save these due to the act of God, or the public enemy, and a fire destroying goods in his possession is an accident against which he insures, unless it is the result of lightning.

13. ——: **Destruction of Goods by Fire: Instructions: Making Defendant Liable as Bailee: Harmless Error.** A common carrier of household goods sued for loss of goods by fire while in its custody as carrier may not complain of instructions limiting its liability to the liability of a bailee for hire, where the jury could find that its negligence caused the loss, and where the uncontradicted evidence showed its liability as a common carrier, whether it was negligent or not.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

AFFIRMED.

*John S. Leahy* and *Alfred Kehde* for appellant.

(1) The defendant was a private and not a common carrier. Faucher v. Wilson, 68 N. H. 338 and cases cited; Mfg. Co. v. Railroad, 19 S. C. 353; Fish v. Chapman, 2 Ga. 349; Thompson v. Storage Co., 97 Mo. App. 135; Jaminet v. Storage & Moving Co., 109 Mo. App. 269.

(2) The court should have given the instruction in the nature of a demurrer requested by defendant at the close of all the evidence. Berger v. Storage & Com. Co., 136 Mo. App. 42; Jaminet v. Storage & Moving Co., 109 Mo. App. 264. (3) Plaintiff's wife was an incompetent witness to prove the value of the articles destroyed. Flannery v. Railroad, 44 Mo. App. 398. (4) It was error to permit plaintiff's wife to refresh her memory from a memorandum made some time after the happening of the events charged in the petition. Steinkeller v. Newton, 9 Carr & P. 313; Jones v. Shroud, 2 Carr & P. 196; The People v. Cotta, 48 Cal. 168; Philbin v. Patrick, 3 App. (N. Y.) 605; Folsom v. Appel River Co., 41 Wis. 602; Kelsea v. Fletcher, 48 N. H. 282; Haven v. Wendell, 11 N. H. 112; Cowles v. State, 50 Ala. 454; Jones v. Johns, Fed. Cas. 7471; Railroad v. Casswry, 109 Ala. 697. (5) Defendant was a bailee for hire, and responsible only for losses occasioned by his or his servant's negligence. Berger v. Storage & C. Co., 136 Mo. App. 36; Casey v. Donovan, 65 Mo. App. 521; Thompson v. Storage Co., 97 Mo. App. 135; Jaminet v. Storage & Moving Co., 109 Mo. App. 269. (6) Improper conduct of plaintiff's counsel is reversible error. Bishop v. Hunt, 24 App. 377; Riley v. Railroad, 68 Mo. App. 652; Fathman v. Tumlity, 34 Mo. App. 236; Evans v. Town of Trenton, 112 Mo. 390.

*Brownrigg & Mason* for respondent.

(1) Under the pleadings and proof, the defendant was a common carrier. Lawson on Bailments, pp. 141, 143; 6 Am. and Eng. Ency. Law (2 Ed.), p. 237; Hutchinson on Carriers (2 Ed.), sec. 47, footnote, also sec. 59; 6 Am. and Eng. Ency. Law (2 Ed.), p. 252; Lloyd v. Storage & Transfer Co., 72 Atl. 516; Jackson, etc., Works v. Hurlburt, 158 N. Y. 34; Hohl v. Laux, 93 S. W. Tex. Civ. App. 1080; Farley v. Lavary, 107 Ky. 523. (2) All questions as to the competency of

plaintiff's wife were waived by defendant as pointed out in the statement. (3) The testimony of plaintiff's wife was clearly competent under section 4656 of the Revised Statutes of Missouri, 1899, both because it was testimony against a carrier and because she was testifying as to a matter in which she had acted as her husband's agent. (4) Whether defendant was a common carrier or an ordinary bailee, plaintiff established his case against the appellant by merely showing delivery of the goods and their return in damaged condition. Berger v. Storage and Moving Co., 136 Mo. App. 40; Arnot v. Branconier, 14 Mo. App. 434; Horton v. Terminal Hotel Co., 114 Mo. App. 357.

STATEMENT.—It is stated in the petition in this case upon which it was tried, that the defendant is a corporation located in the city of St. Louis, and as such held itself out to the public as and was on the date named engaged in conducting a general moving and wagon express business for hire; that on the date named it undertook and agreed for hire and reward, then and there promised by plaintiff to be paid, to load upon its vans, moving and express wagons, the household goods, clothing, trunks, chattels and effects of plaintiff, contained and then being in the residence of plaintiff in a house on Delmar avenue in that city, and transport and carry the goods, etc., by its vans, etc., along the streets of that city and redeliver them to plaintiff at the residence to which he was moving on Cleveland avenue, some two miles or more distant from the starting point. In pursuance of the undertaking and agreement the defendant, on the day named, loaded into its vans, etc., the goods and chattels, etc., at the starting point for the purpose of carrying them to the new residence and there to redeliver them to plaintiff; that defendant by its servants and agents so negligently and carelessly conducted itself in the handling, loading and carrying of the goods, that while they were in the sole care and custody of defendant

and were being carried by it in its vans, a great part of the goods, etc., were lost, damaged, etc., and destroyed by fire as a direct result of the negligence of the defendant. An itemized list of the articles damaged and destroyed, with their value, is incorporated in the petition, damages in the sum of $410.25 being claimed with interest thereon at the rate of 6 per cent per annum from the 31st of March, which was the date of the transaction, to date of judgment.

The answer, after averring that defendant "denies each and every allegation in plaintiff's said petition contained, except the averments specially admitted therein," by way of further answer sets up that "defendant was employed to remove and convey the furniture of plaintiff, as alleged in the petition; that defendant is engaged in the moving business; that at the time alleged in the petition, defendant had the latest and most modern and approved vans to cart and move furniture; that defendant used them for moving the furniture and detailed for the manual labor necessary in moving it, men experienced in the moving and transporting of furniture; that all of plaintiff's furniture was carefully and securely placed in the van of defendant and that all the care and precaution that was usual in the moving of furniture was taken and made use of by the defendant in moving plaintiff's furniture; that neither defendant nor any of its agents caused the fire which burned or destroyed any of plaintiff's furniture; that the fire, if any, which destroyed plaintiff's furniture while it was being hauled or carted in the moving vans of defendant "was caused by persons other than those in the employ of defendant, and was an occurrence over which defendant had no control, and that it could not, by reason of its long experience in the moving and hauling businesss, have foreseen or expected such a happening, and was the result of no carelessness or negligence on the part of this defendant."

The reply was a general denial.

At a trial before the court and jury, plaintiff, introduced as a witness on his own behalf, stated that the defendant was engaged in the general moving and storage business, that is, in moving household furniture from one residence to another; moved furniture from one residence to another; was in the general moving and storage business, as he understood, moving from one residence to another any one that desired to employ it. That a day or two prior to the moving day, plaintiff called up the company and asked its representative to come to plaintiff's house and arrange with his wife as to the moving of the furniture. He himself made no arrangement or agreement with defendant as to prices. He was present when the goods were loaded into the vans; the goods when loaded were in good condition, save usual wear and tear of furniture, incident to use in any household. Some of it had been in use for considerable time, other of it was comparatively new. Two vans, loaded with the furniture and household effects, started from the Delmar avenue residence of plaintiff and he took a street car and went to the Cleveland avenue place to be there when the goods arrived. One of the vans came as far as Cleveland and Tower Grove avenues, and he saw it standing there while he was on the porch of the Cleveland avenue house. There was no driver on the seat. Plaintiff went to the corner of Tower Grove and Cleveland avenues to ascertain what the trouble was about, why the van was not proceeding any further. The other van was one or two streets north of Cleveland avenue. Plaintiff went to where it was and saw there was a fire in that van that was destroying some of the furniture in it. When he arrived there the goods were being taken out of that van. A long examination then took place as to the value of the goods destroyed or damaged, the effect of it being that plaintiff and his wife had made out a list together of the damage and that they estimated the loss at the amount stated

in the petition, the load consisting of furniture, wearing apparel and usual household effects of a family. Some of the stuff was burned entirely and some damaged; some of the damage was occasioned by the fire itself and other by the hasty manner in which the goods were taken out of the van; some small articles were lost. Asked to state particularly what sort of goods defendant was engaged in hauling and moving, he answered, "Household goods, such as one person moves from one place in the city to another." A protracted cross-examination followed, mainly directed to the value of the goods and to the plaintiff's knowledge of the value, and as to how a certain memorandum had been made up from which the list embodied in the petition had been taken. The vans used were large moving vans, such as he had seen around the city; supposed the men who carried the furniture down and loaded it in the vans did so in the usual way; all that he knows about that was that he saw them putting the furniture in the wagon; saw them tying the tail gate up and the van seemed full and they drove off; thought they knew how to load the wagon. Asked if he claimed that defendant's agents were guilty of negligence in loading, witness answered, that he didn't know anything about that. On recross-examination plaintiff described more particularly the condition of the household furniture and effects.

Plaintiff's wife was then offered as a witness and she was asked what passed between her and the defendant company with reference to the moving of these goods. She testified that the representative. of the company called at the house; that Mr. Collier, the plaintiff, had called him up, asked him to come and speak to her about moving the furniture; she carried him over the house and showed him what was to be moved and he agreed to move all for the sum of from eighteen dollars to twenty dollars; he agreed to move everything that was in the house; doesn't remember that anything further passed between them; nothing was said about how the

things should be prepared; the only arrangement was that he would move them on a certain day from Delmar avenue to Cleveland avenue, and further than that witness doesn't think anything was said. When he made the price she agreed to it. Witness was then handed the list of the goods moved, as they are enumerated in the petition and asked what defendant had done with reference to moving the goods. This was objected to by counsel for defendant on the ground of the statute, which counsel claimed makes the witness disqualified on behalf of her husband; that according to the testimony of her husband, he had called the defendant by telephone and told him to call at his residence and that his wife would instruct defendant what to do, made her competent to testify what arrangements she had made as his agent, but that in going on and testifying as to the value of the property and as to what happened to it thereafter, she came within the statutory disqualification; that she had a specific agency merely to employ the defendant but had no agency to appraise what was burned or to make out the memorandum showing it. Asked by the court if he did not think the agency of the wife extended to anything that might be necessary to be done in connection with the moving of the goods or that might occur in connection therewith, counsel answered that he did not think so. The court asked counsel why, and counsel replied, "I think if she is going to act as appraiser—" and the court replied, "Which grows out of the deal—" to which counsel for defendant replied that to save time he would save an exception. Whereupon Mrs. Collier proceeded to testify that on the morning of the moving the representative of defendant came there and commenced moving and taking down the furiture and other household goods and, proceeding to go into details, stated that the goods were carried into the vans and loaded and carried from the Delmar to the Cleveland avenue house. She remained at the Delmar avenue residence while her husband was at the

Cleveland avenue house. She remained at the Delmar avenue house until the last van had left the house. Defendant took everything of any value out of the house that it was desired to have moved. All the goods set out in the petition were moved out of the house by the defendant. The furniture was in good condition that had been loaded in two of the vans. The furniture that was in the third van was almost entirely destroyed. This third van contained the greater part of the bedroom furniture and the stoves, and most of the furniture that was on the third floor of the house was in the van that was destroyed; it was delivered to the defendant and never received by plaintiff. Witness testified that she was familiar with the price of the articles from having purchased most of them herself and having known the purchase price at the time of the purchase, and from purchasing similar articles in St. Louis. She testified to the values as being those set out in the petition.

Another witness testified on behalf of plaintiff as to the value of the goods that he was shown that belonged to the plaintiff, and testified in particular as to the value of a walnut bedstead and walnut furniture included in the list, placing it in the neighborhood of a couple of hundred dollars.

Mrs. Collier, being recalled as a witness, was being examined as to the items in the list contained in the petition in detail, and counsel for the defendant made this statement:

"I think we can expedite this matter, Your Honor. I will be willing to admit—there is some divergence or difference here, or will be in some particulars—but she has pretty well kept to the text, it seems. I am willing to admit she will testify that these various items—we have only gotten half way down this page, and we have that half and another half to cover—and I am willing to admit that the lady will testify that the various items set out in this petition are reasonably worth the amounts opposite their names, at the time they were burned."

Counsel for defendant further admitted that this witness would testify that the damage on those of the goods not destroyed is fully the amount of that set out in the petition; that the estimates are reasonable and that Mrs. Collier will testify that they are reasonable. She further testified in answer to the question as to whether she had gone over the list of goods, endeavoring to arrive at a fair and reasonable estimate of their value, that she certainly did; that in almost every case they gave defendant "the benefit of the doubt." This was objected to by defendant's counsel, who moved that it be stricken out. The court overruled the objection and permitted it to stand, defendant excepting. Mrs. Collier also testified that she objected to the men carrying out and loading a stove that was put in the third van because it had not been cleaned out. On cross-examination, defendant's counsel asked this witness if the men who were then handling the goods that belonged to her and putting them in the wagon seemed to be experienced men. On being objected to, that she had not qualified as an expert, counsel for defendant then asked her if she had frequently moved in St. Louis. She said she had moved four times since 1899, when they came to St. Louis, and had seen the way men handle furniture taking it out and putting it in the wagons; didn't know that she had paid any particular attention to them, except in the instance of the moving of a stove at the time in controversy, when she happened to be in the room and suggested that when they were moving it it ought to be cleaned out first. Counsel for defendant then cross-examined her as to the time in the morning when the defendant's men started to load up the goods, the exact time when they left with the first load; that her husband had gone from the Delmar avenue residence before the wagons left and before he had his lunch and that she had had her lunch that day about three o'clock in the afternoon.

This is substantially all the evidence for plaintiff and it its close the defendant asked the court to instruct the jury that under the law and the evidence their verdict must be for the defendant. This was refused and defendant duly excepted.

On behalf of the defense the president of the company testified that he knew nothing about the burning of the goods in the van, as the only one that he saw after the accident was the one that was burned. This van, like the other in use, was a closed van, with roof, and padded on the inside, of the most up-to-date pattern and style; examined the furniture after it was burned and damaged; saw what had not been destroyed entirely; what he saw that was damaged he estimated to be damaged to the extent of about $100; did not know how the fire occurred.

One of the men employed in moving the furniture was examined and testified that he had taken part in the moving from the Delmar to Cleveland avenue residence; had been in the business of helper in moving for nine years; the van so employed was of the best type of such vehicles; the furniture and household goods had all been loaded in properly without injury, except one bed was pretty well smashed up; all he knew about the fire was that they got down to Tower Grove avenue and this van was on fire. Witness was in front with his van and somebody hallooed to him that the van behind him was on fire and he and his helper got off and ran back and did what they could to save the things. He and another man were on the first van and two men were on the second, the one on which the fire occurred. When he and his helper got to the van which was on fire, they tried to unloosen the rope of the tail gate but the van was full of smoke. They took all they could off the tail gate to save it and when they opened the door the flames of the fire burst right out and they could not do anything more; turned on a fire alarm and the fire engines came and the fire-

men jumped into the van and commenced trying to put the fire out; had commenced loading the furniture in the vans about 7 o'clock and finished at about 12 and started right off for the Cleveland avenue residence; took about an hour to drive from the Delmar avenue residence to the place where the fire begun. The first van loaded was the one that caught fire. The loading of that had been finished about half past eight or nine and it stood there at the Delmar avenue residence until the other van was loaded.

One of the helpers of the defendant testified that he had helped carry the furniture down and load it into the vans. The wagon with which he was connected was the one that caught fire; that wagon had been loaded before the other one and pulled aside and then they loaded the other wagon and about 10 o'clock or later started together to the Cleveland avenue house. When they reached Tower Grove Station he drove across the tracks and got up to Tower Grove avenue and a street car man told him his load was afire. Witness said he did not pay much attention at first and drove a little further and then got down and looked and there was a fire on the rear of his wagon; hallooed to the other boys to come back; they cut the ropes to save what they could on the gate of the wagon and when they knocked the door of the wagon open, the flames came and they could not do anything more; rang up the fire department and it came and put out the fire. Asked what caused the fire, said he was not able to say and did not know. There was a partition in the wagon between the driver's seat and the body of the wagon; had to get down off the seat and go to the rear of the wagon to see about the fire. The wagon was an up-to-date van, one of the new padded vans; brought all the furniture down when loading with care, as they always did, and delivered it with care and placed it in the wagon.

Another witness, a brother of the president of the company, testified on behalf of defendant that he was

in the office when they heard of the wagon being on fire and went to see what the trouble was. When he' got there found part of the furniture, such as had been loaded on the tail gate of the wagon, had been taken off and the top of the van burned out and the fire department had been there throwing water on it; that part of the furniture which was on the tail gate was taken off, that was not damaged; a little over a third of the load, witness said, he should say, of that part inside of the van was damaged; some of the furniture was nearly all burned and the other part of it badly damaged; did not know how the fire occurred and the van was one of the company's largest padded vans, a closed van and the latest type of a moving van. This is all the testimony in the case. At its close defendant requested the court to instruct the jury that under the law and the evidence they should find for defendant. This was refused, defendant excepting.

At plaintiff's request the court instructed the jury, in substance, that if they found from the evidence that defendant agreed to carry plaintiff's goods for hire, and that plaintiff's goods were delivered to the defendant in good condition and were either destroyed or damaged when in possession or custody of the defendant, defendant cannot excuse itself from liability by merely showing that the goods were carefully packed and that it used suitable conveyances for transporting the same and employed careful and competent men to handle the same, but in order to relieve the defendant from liability for the loss or damage of the goods as aforesaid, the jury must believe from the evidence that the loss or damage occurred without negligence on the part of defendant or its agents or servants. The jury were further told that if they found for plaintiff they should assess his damages at such sum as they believed from the evidence would reasonably compensate him for the loss or damage of his goods and chattels. The court also, at its own motion, gave the usual formal instruction as to

the number of jurors necessary to find a verdict. Defendant. duly excepted to the giving of these instructions, except as to the last, and on its part asked an instruction that unless the jury found and believed from the evidence that the damage of which plaintiff complains was caused by the negligence of defendant or its servants, the verdict must be for the defendant; that defendant is a bailee for hire and is only responsible for loss caused by its own or its servants' negligence and that the burthen of proof was on the plaintiff to show, by a preponderance of evidence that the damage for which he brought this action was caused by the negligence of the defendant or its servants. The court gave these instructions but refused instructions asked by the defendant, to the effect that it is not sufficient for plaintiff to show that he employed defendant, that the injury occurred and that the damage resulted, but that plaintiff must further show that defendant was guilty of some particular act of negligence before the jury can find for plaintiff, the presumption being in favor of the defendant unless it is established by positive evidence that the moving company committed some act of negligence; that the defendant is not a common carrier but a private carrier or a bailee for hire and is not an insurer; that a common carrier is responsible for any loss except such as may be entailed by the act of God or a public enemy, but a private carrier, one like the defendant, who is a bailee for hire, is not liable or responsible unless it is shown from the evidence that he has committed some act of negligence, either done something that he should not have done or omitted to do something that he should have done, and from the evidence the jury are instructed that there is no warranty on the part of defendant that he would deliver the goods in any particular condition and unless they found from the evidence some specific or particular act of negligence on the part of defendant, their verdict must be for the defendant.

During the course of the argument counsel for plaintiff, in addressing the jury, said: "When we show that they took them (the goods) away and burned them up—" Counsel for defendant objected, saying that there was no evidence that defendant had burned them up. The court said: "No, there is no evidence that they were burned up by the defendant. . . . The evidence shows they were burned." Counsel for defendant noted an exception to the statement of counsel for plaintiff and asked the court to reprove him, to which the court answered that that had already been done; that he had called the attention of counsel to the fact that there is no evidence that they were burned by the defendant. Counsel for plaintiff then said: "Of course, I don't mean to be unfair. I imagine it might have happened in a dozen different ways."

The jury returned a verdict for plaintiff for $418.25, with interest to date. Being sent back by the court to correct their verdict, they returned into court a verdict for plaintiff for $492.14. In due time defendant filed its motion for new trial which was overruled, defendant duly excepting, and afterwards plaintiff remitted $73.89 of the judgment, that being the interest to which plaintiff, on argument before us, stated they did not think they were entitled, leaving the judgment stand for the sum of $418.25. In due time defendant appealed to this court.

REYNOLDS, P. J. (after stating the facts).— The assignments of error in this court by the learned counsel for defendant are, first, that the defendant was a private and not a common carrier; that it was a bailee for hire and responsible only for loss occasioned by its servants' negligence; second, that the court should have given the instruction in the nature of a demurrer, requested by defendant at the close of all the evidence; third, that plaintiff's wife was an incompetent witness

to prove the value of the articles destroyed and that it was error to permit her to refresh her memory from a memorandum made sometime after the happening of the events charged in the petition and, finally, that the improper conduct of plaintiff's counsel is reversibl! error. Disposing of the minor propositions before taking up the more serious and important ones, we hold that the language of counsel which was objected and excepted to, while improper in that it stated as a fac in the case that which had not been proven, was not only retracted by counsel but the counsel was properly corrected by the court. Under the facts in evidence in the case as to the agency of the wife, we think she was a competent witness for all of the transactions and incidents connected therewith to which this agency related. Nor do we think there was any error in the action of the court in allowing her to refresh her memory from the memorandum made sometime after the happening of the events charged in the petition. This latter matter is so much in the discretion of the trial court, the witnesses being before him and he having such full and ample opportunity to pass on the question of the use of memoranda by a witness, that except in a case manifestly showing an abuse of this discretion, the appellate court will not interfere.

This brings us to the important errors assigned, namely, as to whether a demurrer to the evidence, interposed by the defendant, should have been given and with that is the question as to whether the defendant was a private and not a common carrier. These two assignments run together so intimately that we will dispose of them together.

At the outset it is to be remarked that the instructions given at the instance of plaintiff are not correct on the theory which we think should have governed in the determination of this case. The error in them, however, is entirely against the plaintiff and is of such a character as not to constitute reversible error, if the

theory upon which the appellant, defendant below, argues this case before us is the correct theory. It is fair to say that counsel for the respondent has very frankly accepted the issue presented by the defendant in the assignment of errors made before us and that both counsel in the oral argument of the case before the court, placed the case upon the theory that involved the determination of the question as to whether the defendant was or was not a common carrier. If defendant was a carrier for hire, the demurrer to the evidence would demand more serious consideration. If it was a common carrier, there is nothing to be said in support of that demurrer.

The learned counsel for the defendant claim that this court has held, in several well considered decisions, that a person or corporation, who undertakes to move household goods from one residence to another in a city, is not a common carrier but a private carrier for hire, and is responsible only for loss occasioned either by its own or its servants' negligence. In support of this counsel cite the cases of Jaminet v. American Storage & Moving Co., 109 Mo. App. 257, 84 S. W. 128; Berger v. St. Louis Storage & Commission Co., 136 Mo. App. 36, 116 S. W. 444, and Thompson v. New York Storage Co., 97 Mo. App. 135, 70 S. W. 938. An examination of these cases does not sustain the claim of counsel.

In Thompson v. New York Storage Co., supra, Judge GOODE, who delivered the opinion, states (l. c. 136) that, "The testimony in the case is meager but we think appellant was a private carrier or ordinary bailee for hire, not bound to serve every one without discrimination. . . . Whether a person was a common carrier, bound by all the extraordinary responsibilities and entitled to the privileges of that class of bailees, can sometimes be known only by particular proof of how his business was conducted and what professions he made to the public regarding it. . . . As

no declarations of law were asked on the subject, and as what testimony there is inclines us to look on appellant as a private carrier instead of refuting any possible inference of that kind, we will not interfere with the finding of the court below." The decision then is that the defendant being a private and not a common carrier, which latter it contended it was, was not entitled to a lien for its charges upon the goods which it had carried. This decision is in line with all the authorities which are to the effect that it is a question of law for the court to determine as to what constitutes a common carrier, but it is a question of fact for the jury to determine whether the defendant charged as a common carrier is within that definition and is carrying on his business in that capacity. Thus in Pennewill v. Cullen, 5 Harr. Rep. (Del.) 238, 1. c. 241, it is said that it is for the jury to determine upon the proof, whether the defendant held himself out to the public as engaged in the business of a common carrier. See also 6 Am. and Eng. Ency. (2 Ed.), p. 247.

All that is held in the Thompson case, therefore, is, that under the facts in that case, as shown in it, and in the absence of any declarations of law or instructions, this court would not disturb or interfere with the finding of the court below in holding that that defendant was not a common carrier. It is not, in our opinion, a determination of the question here involved.

The case of Jaminet v. American Storage & Moving Co., supra, was an action against the defendant for the destruction of a mirror and the partial destruction of a portrait of the plaintiff which had been unloaded from a van in which they had been carried, while the defendant was moving the plaintiff's household goods from one point of the city of St. Louis to another point in the same city. At page 262, Judge GOODE, who delivered the opinion of this court, says: "The chief contention of the appellant's counsel is that the court erred in assuming the appellant was a com-

mon carrier, instead of leaving it to the jury to say. This point is irrelevant; for the instructions did not make the appellant's liability depend upon its possessing the character and responsibility of a common carrier, but on finding that it had agreed with respondent, for a consideration, well and safely to move and carry respondent's household furniture and goods, and to deliver them to her in as good condition as when received. As the case is presented here it is immaterial whether the appellant was a common carrier or not." It therefore appears that whatever may have been said in the course of the very learned and elaborate discussion of the law applicable to the case of a special contract, as was in the Jaminet case, the point in decision was most distinctly on ground other than the determination of the question of what constitutes a common carrier, and that decision cannot be held to be a determination of that question. It follows also that as the law as to common carriers was not before the court in that case, and it was a case of the construction of a special contract, there was no consideration given of the question as to whether, if the defendant in that case had been held to be a common carrier, it could by special contract exempt itself from the liabilities of a common carrier. In the case at bar there is no question of a special contract before us, so that we are not in any degree passing on the law applicable to such a situation as might arise if a special contract were relied upon.

Berger v. St. Louis Storage & Commission Co., supra, was an action for the value of several carpets lost to plaintiff and for damages alleged to have accrued to numerous articles of furniture, while stored in the defendant's warehouse. Evidently, therefore, it can have no application whatever to the determination of the question of the liability of the defendant in that case as a common carrier. Its liability was that of a warehouseman, whose duty in the protection and care of property entrusted to him is to use ordinary care, such

care and diligence as an ordinarily prudent person, in that line of business, is accustomed to exercise toward such property or in the care of his own property under similar circumstances, the general rule being that the warehouseman is not liable for the destruction of goods by fire not due to his negligence or that of his agents in the course of their employment, where due diligence has been exercised for their safety, and the burthen of showing negligence of the warehouseman or his agents is always on plaintiff, but it is sufficient in the case of a warehouseman for plaintiff to show delivery of the goods in good condition and their return in a damaged state; from these facts the law declares a prima facie case of negligence is made out. [Berger v. St. Louis Storage & Commission Co., 136 Mo. App. 36, l. c. 40, 116 S. W. 444; 30 Am. and Eng. Ency. (2 Ed.), p. 46, par. 2; p. 48, par. 3, and cases cited in note.] It is very evident, therefore, that the decisions in none of these cases above cited, and they are the only cases cited by counsel from our own State reports, bear on the proposition determining the question here presented. The question here presented for our determination, therefore, may be regarded as an original one and one of first impression in the appellate courts of this State. That question is whether a person or corporation, engaged in the business that this defendant is shown to have been engaged in, was a private carrier for hire or a common carrier. The law relating to common carriers as distinguished from private carriers is so thoroughly known to the profession that we can add nothing of service by undertaking to go into it. By way of having it clearly before us, however, we venture to refer to 1 Hutchinson on Carriers (3 Ed.), where at sec. 4, p. 3, it is said that while private carriers, whether with or without reward, are strictly bailees and nothing more, and that questions as to their liability are to be determined by the ordinary rules which govern the responsibility of bailees, the common carrier of goods

stands upon an entirely different footing, and when questions as to his liability for the loss of the goods or their injury while in his custody for the purpose of carriage arise, they must be decided upon principles peculiarly applicable to them and which have no application to any other kind of bailment except that to the innkeeper by his guest. The question of negligence, when the purely common law relation of the common carrier to the goods exists, is ordinarily wholly foreign to the inquiry whether such a carrier is to be held liable for their loss or injury, and evidence on his part of the most exact diligence will be wholly irrelevant and inadmissible. "If, for example," says Mr. Hutchinson, "the private carrier or any other ordinary bailee be robbed of the goods, or if they should be accidentally destroyed by fire or any other calamity, without negligence on his part, the law will excuse him;" but if they should be destroyed by fire ever so unavoidable, while in the custody of a common carrier, he will nevertheless be liable for them. He is an insurer of the goods against all losses, except those caused by the act of God, the public enemy, the law, the owner or the inherent nature of the goods. This is so well recognized a doctrine of the law relating to the two classes of carriers that it would seem almost superfluous to quote or cite authorities in its support. In support of this Hutchinson cites and quotes Mr. Justice Story (Story on Bailments, sec. 495), to the effect that to bring a person or a company within the definition of a common carrier, he must exercise it as a public employment; he must undertake to carry goods for persons generally, and he must hold himself out as ready to engage in the transportation of goods for hire as a business, not as a casual occupation *pro hac vice*. A common carrier has, therefore, been defined to be one who undertakes for hire or reward to transport the goods of such as choose to employ him from place to place.

147 App—46

Story on Bailments (9 Ed.), chap. 6, p. 466, par. 496, includes among common carriers, truckmen, wagoners, teamsters, cartmen and porters, "who undertake to carry goods for hire, as a common employment, from one town to another, or from one part of a town or city to another."

Says Chancellor Kent, 2 Kent (14 Ed.), *p. 599, "common carriers are those who undertake generally, and not as a casual occupation, and for all people indifferently, to convey goods, and deliver them at a place appointed, for hire as a business, and with or without a special agreement as to price;" and he enumerates among those adjudged to be common carriers, wagoners, teamsters, cartmen and porters.

Ordinarily, carters and expressmen engaged in carrying freight to and from a depot or warehouse, or between places in the same locality, or between different localities, are common carriers and liable as such. [6 Am. and Eng. Ency. (2 Ed.), sec. 3, p. 251, and cases in notes.]

At section 68 of his work, in defining who are common carriers, Hutchinson enumerates the proprietors of "land vehicles of every kind, such as stage and hackney coaches, omnibuses, cabs, drays, carts, wagons, sleds and street cars, who make it a business to carry for hire the goods of such as choose to employ them, even though it may be within the limits of the same town or city, are reckoned as common carriers and held liable as such." Again at section 70, it is said that the "proprietors of land vehicles which are not employed upon any regular line of transportation, but are used exclusively for the carriage of the goods of others for hire to places in the same town, city or neighborhood to which the owners of such goods may desire them to be conveyed, and who may be said to engage in a sort of jobbing business as carriers, such as drays, carts, express or delivery wagons, sleds and trucks, are accord-

ing to a number of authorities in this country, strictly common carriers as to such goods."

Among other cases cited by the author in support of this, is that of Jackson Architectural Iron Works v. Hurlburt et al., 158 N. Y. 34, affirming the decision of the Court of Common Pleas hereafter referred to. That was a case of truckmen, who advertised themselves as general truckmen but whose particular specialty was the moving of heavy machinery. The court held that persons so engaged were not to be deemed carriers for hire and not common carriers because they had no regular tariff of charges for their work, but did it for a special fixed price by agreement. That case has many features in common with the case at bar, for in that case, as in this, the lower court tried it on the theory of the defendant's liability for negligence in unloading the machine which defendant was carrying from a wharf to the place of destination and not that of liability of insurers of the safety of the property. The trial court had been requested to charge that as carriers for hire, defendants were not liable for loss or injury which could not have been prevented by the use of ordinary diligence, and that they were not liable for injury or loss occasioned by unavoidable accident. Says the Court of Appeals (1. c. 39), "These propositions were charged as requested, and, hence, it plainly appears that, although the court refused to charge that the defendants were not common carriers, yet he did charge that they were not liable for any loss or injury which could not have been prevented by ordinary diligence. So the measure of liability which the defendants were held to was that of ordinary diligence and care. This was certainly the most favorable view of the case that the defendants had any right to expect; and since the jury has found upon sufficient evidence that they were wanting in the exercise of such care in unloading the machine from the truck at the factory, the merits of the controversy are not open to review in this court." That

fits the facts in this case very nearly in so far as the matter of instructions is concerned. As we have before observed, the instructions which the court gave in the case at bar at the instance of plaintiff, were a great deal more favorable to the defendant than we think the law of the case authorized or warranted. The opinion of the court, when the Jackson case was before the Court of Common Pleas of New York City and County, is reported in 15 Misc. (N. Y.) 93, also 36 N. Y. Supp. 808, the opinion being by Chief Justice DALY, concurred in by Judges BISCHOFF and PRYOR. As these reports are not very accessible to our brethren of the bar outside of the cities, we have thought it serviceable to give a rather full synopsis of it. In this opinion Judge DALY says:

"The defendants, composing the firm of Hurlburt Bros., are general truckmen, doing business in the city of New York; 'truckmen and forwarding agents,' according to their own description of their occupation. Their 'specialty,' as also described by themselves, is 'heavy machinery' which they move and transport, undertaking what ordinary truckmen cannot do because they have the appliances, wagons and trucks to do it; employing nineteen trucks and twenty horses; making no discrimination as to customers and not refusing to move anything upon request if reasonably paid.

"From this description of the defendant's business they undoubtedly come within the class designated as common carriers, as distinguished from special carriers for hire, who are not engaged in the general business of transporting goods. A common carrier is one who, by virtue of his calling, undertakes, on recompense, to transport personal property from one place to another for all such as may choose to employ him. [Schouler Bailments & Carriers (2 Ed.), 351.] The criterion is whether he carries for particular persons only or whether he carries for every one. If a man holds himself out to do it for every one who asks him he is a

common carrier; 'but if he does not do it for every one, but carries for you or me only, that is a matter of special contract.' [Ingate v. Christie, 3 C. & K. 61.] To be a common carrier one must exercise the business as a public employment; he must undertake to carry goods for persons generally and he must hold himself out as ready to engage in the transportation of goods for hire as a business, not as a casual occupation. [Story Bail., sec. 495.] The transportation must be in pursuance of some carriage vocation which the carrier exercises. One may be a common carrier who has no fixed termini, but leaves the course of transportation in each case to depend upon his customer's wishes. [Liver Alkali Co. v. Johnson, L. R. (7 Ex.) 267; 9 Id. 338.] Wagoners and teamsters whose business it is to carry for hire goods and chattels from one locality to another, common porters, drivers, draymen, truckmen and carmen, whether their employment be carried on from town to town or from one part of a town to another, are common carriers. [Story Bail., sec. 496; Richards v. Westcott, 2 Bosw. 589.] It is not necessary that the exclusive business of the party should be carrying; so held where one whose principal pursuit is farming solicits goods to carry to the market town in his wagon on certain convenient occasions. He makes himself a common carrier for those who employ him. [Schouler, 355, 356; see, also, Angell, Carriers, 870, 871; Chevallier v. Straham, 2 Tex. 115; Harrison v. Roy, 39 Miss. 396.]

"The sole business of the defendants in this case was the carrying of heavy articles of merchandise such as was intrusted to them by the plaintiffs. They undertook, for hire, to transport the goods of such as chose to employ them from place to place (Dwight v. Brewster, 1 Pick. 50), undertaking for hire to carry the goods of all persons indifferently (Gisbourn v. Hurst, 1 Salk. 249), and, under the definitions, must undoubtedly be regarded as common carriers. [Allen v. Sackrider, 37 N. Y. 341.]

"By the common law every common carrier is bound to receive whatever may be offered him for transportation on hire so far as comports with his means and the nature of his calling, and is liable to damages for unreasonable refusal. [Schouler, 383; Allen v. Sackrider, supra.] It has been said that the test in a doubtful case is whether the carrier would be so liable; but if we apply that test to the present case we meet with no difficulty. These defendants are but truckmen, or cartmen, on a large scale. A truckman would undoubtedly be liable for unreasonable refusal to transport the goods of a householder who was compelled to move, for instance, on the first of May; and in the case of the removal of heavy machinery it is difficult to perceive why truckmen, whose business is to handle just such bulky goods, would not be liable for a like unreasonable refusal in a like emergency. The obligation to carry all goods offered grows out of the general transportation business in which the carrier is engaged, and his holding himself out to the public as a general carrier, so that dealings are had with him in reliance thereon. It makes no difference that these defendants' 'specialty' was the moving of heavy machinery and that they would refuse to move furniture, for, as I said before, the carrier is only bound to convey so far as comports with his means and the nature of his calling.

"Nor is it of importance that defendants have no regular tariff of charges for their work, but that a special price is fixed by agreement in every case they undertake. The necessity for a different charge in each case grows out of the difference in labor in handling articles of great bulk. The charge in each case may be proportioned to the risk assumed and commensurate with the carriers' obligation as insurers."

In Caye v. Pool's Assignee, 108 Ky. 124, 55 S. W. 887, also cited by Hutchinson, the appellant was held to be a common carrier. "He was engaged," says the court (l. c. 126), "in the business of transporting chat-

tels for all persons who chose to employ and remunerate him therefor. Owners of stages, stage wagons, railroad cars, teamsters, cartmen, draymen and porters are common carriers," citing Black, Law Dict.; 2 Kent, Comm. 597, and 1 Bouv. Law Dict., p. 299.

Referring again to the case of Pennewell v. Cullen, supra, it is said by the Supreme Court of Delaware (1. c. 241) that it is not necessary that the trips of the defendant averred to be a common carrier should be regular between the same points or places, if engaged in the business of carrying grain for others, generally, to and from any point, he is liable as a common carrier and his liability as such is that of an insurer against everything except unvoidable accident, usually called the act of God.

In the very old case and what may be said the leading case of Forward v. Pittard, an action on the case against the defendant as a common carrier for not safely carrying and delivering goods, it appeared that the defendant was a wagoner, carrying hops from one place to another by his public road wagon. Lord MANSFIELD, delivering the opinion, as reported 1 D. & E. 27, 1. c. 33, assumes that the business was that of a common carrier and that the wagoner was liable as such, not simply for due care and diligence but as an insurer and liable for a fire which had injured the goods, the fire being the result of an accident but not resulting from an act of God, as would be lightning or from the act of the King's enemies. This is the case in which Lord Mansfield defines the meaning of an act of God as distinguished from the act of man.

In Ingate v. Christie, 3 C. & K. 61, Baron Alderson, referring to Mr. Justice Story as his authority and as great authority, treating of a case in which the defendant was employed by merchants to take 100 cases of figs in his lighter from Mills' Wharf, in Thames street, to the "Magnet" steamer, and while they were on the lighter run down by a steamer and the figs lost,

it being proved that the defendant had a counting-house with his name and the word "lighterman," on the door posts of it, and that he carried goods in his lighters from the wharves to the ships for anybody who employed him, says (l. c. 63), "If a person holds himself out to carry goods for everyone as a business, and he thus carries from the wharves to the ships in harbour, he is a common carrier, and if the defendant is a common carrier he is liable here. There must be a verdict for the plaintiff." In a footnote to the report of this case, at page 62, the quotation from Mr. Justice Story, which we have before set out, is set out, together with a long line of authorities cited by Judge Story in support of his position.

In Nugent v. Smith, 1 C. P. Div. (Law Reports 1875-76) 19, an opinion by Mr. Justice Brett, it is said (l. c. 27), that "The real test of whether a man is a common carrier . . . really is, whether he has held out that he will, so long as he has room, carry for hire the goods of every person who will bring goods to him to be carried. The test is not whether he is carrying on a public employment, or whether he carries to a fixed place; but whether he holds out, either expressly or by a course of conduct, that he will carry for hire, so long as he has room, the goods of all persons indifferently who send him goods to be carried." At page 31 of the same report, it is noted that many attempts have been made to except "wharfingers, forwarding agents, carters," and the like from the rule applicable to common carriers, but that all such attempts have failed.

The fact that this defendant may have limited its employment to the mere carriage and moving of household goods, does not change its position as a common carrier, for the employment may be limited to the mere carriage of particular kinds of property and goods and when this is so and the fact is known and avowed, the owners will not be liable as common carriers for any other goods or property entrusted to their agents, with-

out their consent, but they are liable as common carriers for the loss of those goods, in the carriage and moving of which they are engaged as a business, not as a mere occasional act but as a regular business. [The Citizens' Bank v. The Nantucket Steamboat Co., 2 Story's Rep. 16, l. c. 33; Harrison v. Roy, 39 Miss. 396; Gisbourn v. Hurst, 1 Salk. 249; Kansas Pacific Ry. Co. v. Nichols, Kennedy Co., 9 Kan. 235, l. c. 253; Tunnel v. Pettijohn, 2 Harr. (Del.) 48.] It appears in this case and by other reported cases of our own court, that this defendant, like other similar concerns, is also a warehouseman. When acting as such, its liability is that of a warehouseman, not that of a common carrier. The same situation has frequently arisen as to our railroads —they may also be warehousemen, as well as common carriers.

The instruction given to the jury at the instance of the plaintiff was, under the facts proven in this case as to the nature of the business of defendant, erroneous. It submitted to the jury the question as to whether or not the defendant had been negligent, and that it was for the defendant to have shown lack of negligence. This apparently on the theory that the fire, accruing to the damage and destruction of the goods of plaintiff, in itself, threw upon defendant the *onus* of proving want of negligence on its part. It was not an erroneous declaration of the law as to a carrier for hire. Even if defendant was responsible as a mere carrier for hire, it thereby was a bailee for hire and proof of the fact of the delivery of the goods to the defendant in good condition and failure of defendant to return them to plaintiff in like condition, threw upon defendant the burden of excusing itself for non-delivery. [Horton v. Terminal Hotel & Arcade Co., 114 Mo. App. 357, l. c. 362, 89 S. W. 363.] The verdict of the jury may be construed and sustained as responsive to this issue, and as finding from the evidence in the case, that the loss and damage was to be charged to the negligence of the defendant.

True the evidence in the case is slight to this effect, about all of it being that defendant's drivers of the van testified that a street car motorman passing him, called his attention to the fact of a fire in his van, but that he paid no attention to it until afterwards, how long afterwards does not appear, when looking around he himself discovered the fire and that by that time it had obtained such headway that he could not arrest it. The jury had a right to infer negligence resulting in the loss from this. We, as a reviewing court, cannot say that this was not in itself evidence of negligence in the agents and employees of defendant, that if they had given prompt attention to the matter when their attention was called to it the fire could have been extinguished before doing much damage. Be that as it may, the instruction was greatly to the disadvantage of plaintiff himself, and one of which the defendant surely has no right to complain. Being a common carrier, as we hold, on the uncontradicted evidence in the case, the defendant was liable whether negligent or not for the loss or damage to the goods entrusted to it by the plaintiff. As a common carrier it was an insurer against all loss and damage save those due to the acts of God or to those of the public enemy; fire destroying goods, when that fire is the result of any cause other than lightning from the heavens, is an accident against which the common carrier, by his obligation as such, insured. Under the facts peculiar to this case, giving that instruction is not reversible error.

Applying the law as we understand it to the facts in this case, we hold that the instruction asked by the defendant for a direction for a verdict in its favor, as well as the instruction declaring that the defendant was not a common carrier but a carrier for hire, were properly refused. As the evidence in the case was without contradiction that the defendant held itself out as engaged in the general business of moving for all who chose to employ it, in the city of St. Louis, it was, as

to that part of its business, a common carrier and as such liable for this fire which destroyed and damaged the goods of the plaintiff, and while, as we have before remarked, the jury was misdirected as to the necessity of proving negligence on the part of the defendant or failure to prove negligence, that was an error of which this defendant cannot complain. The verdict is obviously for the right party and there is no error in the case to the manifest prejudice of the defendant. The judgment of the circuit court is affirmed. All concur.